Andrew M. Calamari
Sanjay Wadhwa
Gerald A. Gross
Paul G. Gizzi
Eric M. Schmidt
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0150 (Schmidt)
Email: SchmidtE@sec.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------:

SECURITIES AND EXCHANGE COMMISSION,  :

                          Plaintiff,  :      ECF CASE

             -against-  :

                          :      COMPLAINT AND
MARTIN SHKRELI,  :      JURY DEMAND
EVAN GREEBEL,  :
MSMB CAPITAL MANAGEMENT LLC,  :
and  :
MSMB HEALTHCARE MANAGEMENT LLC,  :

                    Defendants.  :

------------------------------------------------------------------:

      Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants Martin Shkreli ("Shkreli"), Evan Greebel ("Greebel"), MSMB Capital Management

LLC ("MSMB Adviser") and MSMB Healthcare Management LLC ("MSMB Healthcare

Adviser"), alleges as follows:

<u>SUMMARY</u>

      1.  This case involves widespread fraudulent conduct orchestrated by Shkreli from at

least October 2009 through March 2014.  Some of this fraudulent conduct was aided and abetted

by Shkreli's lawyer, Greebel.

2. Shkreli was the founder and portfolio manager of MSMB Capital Management LP ("MSMB") and MSMB Healthcare LP ("MSMB Healthcare"), a pair of hedge funds. He was also the managing member of defendants MSMB Adviser and MSMB Healthcare Adviser, the investment advisers to MSMB and MSMB Healthcare, respectively. Shkreli made material misrepresentations and omissions to investors and prospective investors in MSMB; lied to one of MSMB's executing brokers about MSMB's ability to settle short sales Shkreli had made in MSMB's account; and misappropriated funds from MSMB and MSMB Healthcare. Later, after Shkreli had founded and taken public a pharmaceutical company, Retrophin, Inc. ("Retrophin"), Shkreli, aided and abetted by Greebel, fraudulently induced Retrophin to fund settlements with persons who had claims against Shkreli arising out of their investments in Shkreli's hedge funds.

3. Specifically, Shkreli, and through him MSMB Adviser or MSMB Healthcare Adviser, engaged in the following fraudulent conduct:

    a.    From October 2009 through July 2011, Shkreli misappropriated approximately $120,000 of investor funds from MSMB.

    b.    From July 2010 through September 2012, Shkreli made material misrepresentations to investors and potential investors in MSMB, including statements (i) exaggerating MSMB's investment performance, (ii) inflating the amount of MSMB's assets under management, and (iii) falsely stating that MSMB had retained an independent auditor and a professional administrator.

    c.    On or about February 1, 2011, Shkreli, on behalf of MSMB, sold short over 32 million shares of an issuer referred to herein as "Company A" in MSMB's account at a

2

registered broker-dealer referred to herein as "Executing Broker." In placing the short

sales, Shkreli represented to Executing Broker that MSMB had located sources from

which to borrow the shares necessary to settle the trades through MSMB's prime broker,

referred to herein as "Prime Broker."

d.      From January through March, 2013, Shkreli misappropriated approximately

$900,000 of investor funds from MSMB Healthcare to fund the settlement of an

arbitration proceeding brought by Executing Broker in connection with MSMB's failure

to settle its short sales of Company A's stock, as a result of which Executing Broker

incurred a loss of over $7 million.

e.      From September 2013 through March 2014, Shkreli, aided and abetted by

Greebel, who was Retrophin's outside counsel and corporate secretary, fraudulently

induced Retrophin to issue Retrophin stock and make cash payments to certain

disgruntled investors in Shkreli's hedge funds by having the investors enter into

agreements with Retrophin that misleadingly stated that the payments were for consulting

services, when in fact the payments were for the release of potential claims against

Shkreli. Shkreli misrepresented and/or omitted to disclose to Retrophin's Board of

Directors ("Board") that the primary purpose of the agreements was to settle potential

claims against Shkreli.

## VIOLATIONS

4.   Based on the conduct alleged in this Complaint, Shkreli is liable for violations of

Sections 17(a)(1) and 17(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §

77q(a)(1) & (2), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15

U.S.C. § 78j(b), and Rules 10b-5 and 10b-21 thereunder, 17 C.F.R. §§ 240.10b-5 and 10b-21;

Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15

U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. §

275.206(4)-8, and for aiding and abetting MSMB Adviser's violations of Sections 206(1),

206(2), and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4), and Rule

206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8, and MSMB Healthcare Adviser's violations of

Sections 206(1) and 206(2) of the Advisers Act , 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

5.   Based on the conduct alleged in this Complaint, Greebel is liable for aiding and

abetting Shkreli's violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule

10b-5 thereunder, 17 C.F.R. § 240.10b-5.

6.   Based on the conduct alleged in this Complaint, MSMB Adviser is liable for

violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1),

80b-6(2) and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

7.   Based on the conduct alleged in this Complaint, MSMB Healthcare Adviser is liable

for violations of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-

6(2).

## JURISDICTION AND VENUE

8.   The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d) of the Exchange Act, 15

U.S.C. § 78u(d), and Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), seeking

permanently to enjoin Defendants from engaging in the acts, practices and courses of business

alleged herein.

9.   The Commission also seeks a final judgment requiring Defendants to disgorge ill-gotten gains, if any, with prejudgment interest thereon, and to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

10. The Commission also seeks a final judgment entering an officer-and-director bar against Shkreli pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), and entering an officer-and-director bar against Greebel pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

11. This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a), Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa, and Sections 209(c), 209(d) and 209(e) of the Advisers Act, 15 U.S.C. §§ 80b-9(c), 80b-9(d) and 80b-9(e).

12. Venue is proper in the Eastern District of New York pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 209(d) of the Advisers Act,15 U.S.C. §§ 80b-9(d).  Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred in the Eastern District of New York, including, among other things, the misappropriation of funds from investors of MSMB.

## DEFENDANTS

13. Shkreli, age 32, is a resident of New York, New York. Shkreli was the Managing Partner and the portfolio manager for MSMB and MSMB Healthcare and the Managing Member of MSMB Adviser and MSMB Healthcare Adviser.  In March 2011, Shkreli founded Retrophin

LLC, a pharmaceuticals company that went public in December 2012 and became Retrophin, Inc. (collectively with Retrophin LLC, "Retrophin"). Shkreli was Retrophin's President and CEO until September 30, 2014. Shkreli currently is the CEO of Turing Pharmaceuticals, a privately-held company he founded after he left Retrophin.

14. Greebel, age 42, is a resident of Scarsdale, New York. Greebel is admitted to the bar of the State of New York and represented Retrophin as outside counsel from the company's inception in 2011 until October 2014. Greebel also served as Retrophin's corporate secretary during the relevant time.

15. MSMB Adviser is a Delaware limited liability company that served as MSMB's investment adviser. MSMB Adviser acted through Shkreli, its founder and managing member.

16. MSMB Healthcare Adviser is a Delaware limited liability company that served as MSMB Healthcare's investment adviser. MSMB Healthcare Adviser acted through Shkreli, its founder and managing member.

## OTHER RELEVANT PARTIES

17. MSMB is a hedge fund established by Shkreli in 2009. MSMB is a Delaware limited partnership. Shkreli and MSMB Adviser acted as investment advisers to MSMB.

18. MSMB Healthcare is a hedge fund established by Shkreli in February 2011. MSMB Healthcare is a Delaware limited partnership. Shkreli and MSMB Healthcare Adviser acted as investment advisers to MSMB Healthcare.

19. Executing Broker is a registered broker-dealer and acted as an executing broker for MSMB.

20. Prime Broker is a registered broker-dealer and acted as prime broker for MSMB.

21.  Investor A is a private investor who invested an aggregate of about $1,250,000 in MSMB during December 2010 and January 2011.

22.  Retrophin is a biopharmaceutical company incorporated in Delaware and based in New York, New York.  Retrophin's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on NASDAQ.

23.  Elea Capital ("Elea") was a hedge fund operated by Shkreli in 2006 and 2007.  Elea ceased operations in 2007 following an unprofitable trade made by Shkreli for Elea.

## FACTS

### Background

24.  From October 2009 to January 2011, nine investors invested a total of about $3,015,000 in MSMB.  MSMB began trading securities in November 2009.

25.  From November 2009 through November 2010, largely as a result of his trading, Shkreli lost the over $660,000 that had been invested in MSMB prior to November 30, 2010.  As of November 30, 2010, the value of assets in MSMB's brokerage and bank accounts was only about $331.

26.  MSMB was able to continue operating because Shkreli successfully solicited an additional $2.35 million in investments in December 2010 and January 2011, including the $1.25 million invested by Investor A.  By the end of January 2011, however, over half of the new money invested was gone, primarily due to trading losses, and the net asset value of MSMB's brokerage and bank accounts was only about $1,126,000.

27.  By the end of February 2011, MSMB's bank and brokerage accounts had a negative value.  As discussed below, Shkreli took a short position in Company A in MSMB's account at

Executing Broker in February 2011, which resulted in losses of over $7 million in MSMB's

account at Executing Broker. The net asset value of MSMB's other brokerage or bank accounts

totaled only about $58,500.

## Shkreli and MSMB Adviser Misappropriated Funds from MSMB

28. Part of the drastic decline in MSMB's net asset value was attributable to the fact that

from October 2009 through July 2011, more than $450,000 invested in MSMB was used to pay

expenses. At least $120,000 of these expenses was not properly chargeable to MSMB under the

terms of the limited partnership agreement, including charges for office rent, food deliveries,

medical expenses, clothing, and cash withdrawals.

## Shkreli Made Misrepresentations to Investor A

29. On July 26, 2010, while Shkreli was soliciting Investor A to invest in MSMB, Shkreli

sent Investor A an e-mail with the subject line "MSMB Capital Management Performance

Estimate." This email stated that, as of July 23, 2010, MSMB had "returned +35.77% since

inception on 11/1/2009." This statement was false because MSMB's trading at that point had

generated losses of about 18%.

30. On December 2, 2010, as part of his due diligence relating to MSMB, Investor A sent

Shkreli an email, asking Shkreli: "What are the current AUM [assets under management]?" and

"Who is [sic] your auditor and administrator?" Shkreli replied by email, stating that the AUM

was $35 million and identifying specific firms as MSMB's auditor and its administrator.

31. Shkreli's representation that MSMB had $35 million in assets under management was

false. In fact, MSMB had less than $1,000 in assets in its bank and brokerage accounts on

December 2, 2010, not $35 million as Shkreli claimed. Shkreli's statement that MSMB had

8

retained an auditor and an administrator also was false because MSMB had not retained the specified auditor or administrator, or any other auditor or administrator.  Shkreli made these misrepresentations knowingly or recklessly.

**Shkreli Made Misrepresentations to Executing Broker**

32. On February 1, 2011, Shkreli sold short over 32 million shares of Company A in MSMB's account at Executing Broker.  Shkreli knowingly or recklessly misrepresented to Executing Broker that MSMB had located a source to borrow the Company A shares that MSMB was selling short.

33. Shkreli placed orders for these short sales through Executing Broker's direct access system, which permitted Shkreli to transmit orders using a computer located at MSMB's offices. Each of the Company A short sale orders transmitted by Shkreli and executed by Executing Broker included a representation by Shkreli that MSMB could borrow sufficient Company A shares from Prime Broker to settle the short sales executed by Executing Broker.

34. In fact, MSMB had not located Company A shares to borrow from Prime Broker or any other source sufficient to settle the Company A short sales MSMB made through Executing Broker.  Shkreli knowingly or recklessly misrepresented to Executing Broker that MSMB had located a source to borrow sufficient shares to settle the short sales made by MSMB in its account with Executing Broker.

35. Shkreli continued to knowingly or recklessly mislead Executing Broker about MSMB's ability to settle its short trades until the afternoon of February 2, 2011, by sending requests to Executing Broker asking for a commission reduction and asking Executing Broker to submit the trades to Prime Broker in small pieces to make them easier to clear.  These requests

implied that MSMB otherwise had the ability to settle the trades, when in fact it did not. At the time he sent the requests to Executing Broker, Shkreli had not disclosed to Executing Broker that MSMB was unable to settle the Company A trades and that Shkreli had already instructed Prime Broker not to accept the Company A trades from Executing Broker for settlement.

36. As a consequence, MSMB failed to settle a short position of over 11 million shares of Company A in its account at Executing Broker.  Executing Broker ultimately bought sufficient Company A shares on the market to close MSMB's short position at a loss of over $7 million.

**Shkreli Misappropriated Funds to Settle Executing Broker's Arbitration Claim**

37. On or about August 2, 2011, Executing Broker commenced a FINRA arbitration proceeding against, among others, MSMB and Shkreli (but not MSMB Healthcare), seeking recovery of over $7 million in losses to Executing Broker as a result of MSMB's failure to settle the Company A trades it had placed on February 1, 2011, plus interest and costs.

38. On or about September 5, 2012, the parties entered into a settlement agreement whereby, in light of Shkreli's and MSMB's inability to pay, the matter was settled for payments totaling $1,542,500.

39. On or about January 18, 2013, Shkreli caused $125,000 to be paid from the account of MSMB Healthcare to Executing Broker to extend the payment deadline set forth in the September 5, 2012 settlement agreement.

40. On March 4, 2013, Shkreli caused $775,000 to be paid from the account of MSMB Healthcare as partial payment of the amount payable to Executing Broker pursuant to the September 5, 2012 settlement agreement.

41. Shkreli had no right to use MSMB Healthcare's investor funds to pay the settlement

10

he had made with Executing Broker.

**Shkreli Misrepresented MSMB's Financial Performance to Investors**

42. In early February 2011, shortly after MSMB's assets had been virtually wiped out,
Shkreli embarked on a scheme to conceal MSMB's losses from MSMB's limited partners (*i.e.*,
the investors). Starting in February 2011, and continuing until September 2012, Shkreli e-mailed
"performance estimates" to MSMB's investors reflecting that the limited partnership investments
had been and continued to be profitable, when in fact almost all of MSMB's assets had been lost.

43. For example, on February 8, 2011, Shkreli sent an e-mail to at least five MSMB
investors claiming that through January 2011, MSMB had returned "+35.95% since inception on
11/1/2009." In fact, at the end of January 2011, MSMB had only about $1.126 million remaining
of the over $3 million originally invested.

44. On March 2, 2011, Shkreli stated in e-mails to MSMB investors that "MSMB
returned +4.24% in February 2011" and had "returned +41.71% since inception on 11/1/2009."
In fact, by the end of February 2011, MSMB had virtually no assets. MSMB had suffered over
$7 million in losses in its account at Executing Broker as the result of its trading in Company A
on February 1, 2011. Even setting aside the losses at Executing Broker, the net asset value of
MSMB's prime brokerage account and the cash balance in its bank account amounted to only
about $58,500.

45. Shkreli continued to send "performance estimates" until September 2012, when he
informed the limited partners that through June 2012, MSMB had "returned +79.49% net of fees
since inception on 11/1/2009." At the end of June 2012, however, MSMB had no assets in its
prime brokerage account or its bank account.

**Shkreli, Aided and Abetted by Greebel, Fraudulently Induced Retrophin to Issue Stock and Pay Cash to Disgruntled Hedge Fund Investors**

46. In September 2012, Shkreli informed investors in MSMB and MSMB Healthcare that he was liquidating the funds and that investors could redeem their limited partnership interests for cash, shares of Retrophin or a combination of the two. Shkreli stated that he anticipated completing the distribution of cash and Retrophin stock to MSMB and MSMB Healthcare limited partners by October 31, 2012.

47. In fact, MSMB and MSMB Healthcare had little cash to distribute, and their assets, if any, consisted primarily of Retrophin shares. Accordingly, Shkreli was unable to pay the limited partners with cash. Many limited partners were dissatisfied that they had not been paid in cash and/or with the number of Retrophin shares they were to receive. Also, many limited partners complained that they had never been provided with complete information relating to the asset composition and value of the funds or of Retrophin, so they could evaluate the fairness of the conversion of their limited partnership interests to Retrophin stock. At least one investor threatened litigation.

48. Separately, Shkreli had issued a $250,000 note to an investor in Elea to compensate him for the losses in that fund.

49. In order to satisfy these disgruntled MSMB and Elea hedge fund investors, Shkreli caused Retrophin to enter into consulting agreements with the hedge fund investors or members of their families. The primary purpose of these agreements was to settle potential claims that these investors might assert against Shkreli.

50. Shkreli did not disclose to Retrophin's Board that the true purpose of these consulting

12

agreements was to settle potential claims against Shkreli.

51. Shkreli fraudulently caused Retrophin to transfer at least approximately $7.5 million in cash and Retrophin stock pursuant to these purported consulting agreements so the investors would release any claims they had against Shkreli.

52. Greebel knew or recklessly disregarded that the true purpose of the consulting agreements was to settle potential claims against Shkreli, rather than provide Retrophin with significant consulting services.

53. Greebel drafted at least three of the consulting agreements Shkreli caused Retrophin to enter into with disgruntled investors in Shkreli's hedge funds.

54. Greebel knew or recklessly disregarded that the members of Retrophin's Board, other than Shkreli, had not been informed that the true purpose of the consulting agreements was to settle potential claims against Shkreli, rather than provide Retrophin with significant consulting services.

55. Greebel did not disclose to Retrophin's Board that the true purpose of these consulting agreements was to settle potential claims against Shkreli.

**FIRST CLAIM FOR RELIEF**

**Violations of Section 17(a)(1) and 17(a)(2) of the Securities Act
(Shkreli)**

56. The Commission realleges and incorporates paragraphs 1 through 55 by reference as if fully set forth herein.

57. Retrophin common stock and the limited partnership interests in MSMB and MSMB Healthcare are "securities" within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. §

77b(1).

58. Shkreli, directly or indirectly, singly or in concert, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce, or by the use of the mails, (a) has employed, is employing, or is about to employ, devices, schemes, or artifices to defraud; and (b) has obtained money or property by means of, or has otherwise made, untrue statements of material fact, or has omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.

59. By reason of the foregoing, Shkreli, singly or in concert, directly or indirectly, has violated, is violating, and unless enjoined will again violate, Sections 17(a)(1) and 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(1) and (2).

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder (Shkreli)

60. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

61. Retrophin common stock and the limited partnership interests in MSMB and MSMB Healthcare are "securities" within the meaning of Section 3(a)(10) of the Exchange Act,15 U.S.C. § 78c(a)(10).

62. Shkreli, directly and indirectly, singly or in concert, knowingly or recklessly, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange: (a) has employed, is employing, or is about to employ, devices, schemes, or artifices to defraud; (b) has

made, is making, or is about to make untrue statements of material fact, or has omitted, is

omitting, or is about to omit to state material facts necessary in order to make statements made,

in light of the circumstances under which they were made, not misleading; or (c) has engaged, is

engaging, or is about to engage in acts, practices, or courses of business which operate or would

operate as a fraud or deceit upon other persons.

63. By reason of the foregoing, Shkreli, directly or indirectly, singly or in concert, has

violated, is violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act,

15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### THIRD CLAIM FOR RELIEF

**Aiding and Abetting Violations of Section 10(b) of the Exchange Act
and Rule 10b-5 Thereunder
(Greebel)**

64. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

65. Retrophin common stock and the limited partnership interests in MSMB and MSMB

Healthcare are "securities" within the meaning of Section 3(a)(10) of the Exchange Act,15

U.S.C. § 78c(a)(10).

66. Shkreli, directly and indirectly, singly or in concert, knowingly or recklessly, in

connection with the purchase and sale of securities, by use of the means and instrumentalities of

interstate commerce, or of the mails, or of the facilities of a national securities exchange: (a) has

employed, is employing, or is about to employ, devices, schemes, or artifices to defraud; (b) has

made, is making, or is about to make untrue statements of material fact, or has omitted, is

omitting, or is about to omit to state material facts necessary in order to make statements made,

in light of the circumstances under which they were made, not misleading; or (c) has engaged, is

engaging, or is about to engage in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon other persons, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

67. Greebel knew or recklessly disregarded that Shkreli's conduct was improper and knowingly rendered to Shkreli substantial assistance in this conduct.

68. By reason of the foregoing, Greebel aided and abetted, and unless enjoined will continue to aid and abet, Shkreli's violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## FOURTH CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-21 Thereunder (Shkreli)

69. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

70. Company A common stock is a "security" within the meaning of Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), and is an "equity security" within the meaning of Section 3(a)(11) of the Exchange Act, 15 U.S.C. § 78c(a)(11).

71. Shkreli, directly and indirectly, singly or in concert, knowingly or recklessly, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, has submitted an order to sell an equity security while deceiving a broker or dealer, a participant of a registered clearing agency, or a purchaser about his intention or ability to deliver the security on or before the settlement date, and has failed to deliver the security on or before the settlement date.

72. By reason of the foregoing, Shkreli, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-21 thereunder, 17 C.F.R. § 240.10b-21.

## FIFTH CLAIM FOR RELIEF

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Shkreli, MSMB Adviser and MSMB Healthcare Adviser)

73. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

74. At all relevant times, Shkreli, MSMB Adviser and MSMB Healthcare Adviser were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

75. Shkreli, MSMB Adviser and MSMB Healthcare Adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly: (a) have employed or are employing devices, schemes, or artifices to defraud clients or potential clients; or (b) have engaged or are engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client.

76. By reason of the foregoing, Shkreli, MSMB Adviser and MSMB Healthcare Adviser directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined will again violate, Sections 206(1) and 206 (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

## SIXTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Shkreli)

77. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

78. At all relevant times, MSMB Adviser and MSMB Healthcare Adviser were

"investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. §80b-2(a)(11).

79. MSMB Adviser and MSMB Healthcare Adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or recklessly: (a) have employed or are employing devices, schemes, or artifices to defraud clients or potential clients; or (b) have engaged or are engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client in violation of Sections 206(1) and 206 (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

80. MSMB Adviser and MSMB Healthcare Adviser acted through Shkreli, who was their managing member, in violating Sections 206(1) and 206 (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

81. Shkreli knew or recklessly disregarded that MSMB Adviser's and MSMB Healthcare Adviser's conduct was improper and knowingly rendered to MSMB Adviser and MSMB Healthcare Adviser substantial assistance in this conduct.

82. By reason of the foregoing, Shkreli aided and abetted, and unless enjoined will continue to aid and abet, MSMB Adviser's and MSMB Healthcare Adviser's violation of Sections 206(1) and 206 (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

## SEVENTH CLAIM FOR RELIEF

### Violations of Sections 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder (Shkreli and MSMB Adviser)

83. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

84. At all relevant times, Shkreli and MSMB Adviser acted as investment advisers to

18

MSMB, a "pooled investment vehicle" as defined in Advisers Act Rule 206(4)-8(b), 17 C.F.R. §

275.206(4)-8(b).

85. Shkreli and MSMB Adviser, while acting as investment advisers to a pooled

investment vehicle, by use of the mails or any means or instrumentality of interstate commerce,

directly or indirectly, engaged in acts, practices, or courses of business which were fraudulent,

deceptive or manipulative.  Shkreli and MSMB Adviser made untrue statements of a material

fact or omitted to state a material fact necessary to make the statements made, in the light of the

circumstances under which they were made, not misleading, to investors or prospective investors

in the pooled investment vehicle, and otherwise engaged in acts, practices, or courses of

businesses that were fraudulent, deceptive or manipulative with respect to investors or

prospective investors in the pooled investment vehicle.

86. By reason of the foregoing, Shkreli and MSMB Adviser directly or indirectly, singly

or in concert, have violated, are violating, and unless enjoined will again violate, Section 206(4)

of the Advisers Act, 15 U.S.C. §80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-

8.

## EIGHTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Sections 206(4) of the Advisers Act
and Rule 206(4)-8 Thereunder
(Shkreli)**

87. Paragraphs 1 through 55 are hereby realleged and incorporated by reference.

88. At all relevant times, MSMB Adviser acted as an investment adviser to MSMB, a

"pooled investment vehicle" as defined in Rule 206(4)-8(b), 17 C.F.R. § 275.206(4)-8(b).

MSMB Adviser, while acting as investment adviser to a pooled investment vehicle, by use of the

19

mails or any means or instrumentality of interstate commerce, directly or indirectly, engaged in acts, practices, or courses of business which were fraudulent, deceptive or manipulative. MSMB Adviser made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle, and otherwise engaged in acts, practices, or courses of businesses that were fraudulent, deceptive or manipulative with respect to investors or prospective investors in the pooled investment vehicle in violation of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

89. MSMB Adviser acted through Shkreli, who was its managing member, in violating Section 206(4) of the Advisers Act, 15 U.S.C. §80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

90. Shkreli knew or recklessly disregarded that MSMB Adviser's conduct was improper and knowingly rendered to MSMB Adviser substantial assistance in this conduct.

91. By reason of the foregoing, Shkreli aided and abetted, and unless enjoined will continue to aid and abet, MSMB Adviser's violation of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

I.

Enter a Final Judgment permanently restraining and enjoining Shkreli from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15

U.S.C. §§ 78j(b), and Rules 10b-5 and 10b-21 thereunder, 17 C.F.R. §§ 240.10b-5 and 240.10b-21; Sections 206(1), 206 (2) and 206(4)of the Advisers Act, 15 U.S.C. §§80b-6(1), 80(b)-6(2) and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

## II.

Enter a Final Judgment permanently restraining and enjoining Greebel from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, thereunder, 17 C.F.R. § 240.10b-5.

## III.

Enter a Final Judgment permanently restraining and enjoining MSMB Adviser from violating Sections 206(1), 206 (2) and 206(4)of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80(b)-6(2) and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8;

## IV.

Enter a Final Judgment permanently restraining and enjoining MSMB Healthcare Adviser from violating Sections 206(1) and 206 (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2);

## V.

Enter a Final Judgment ordering Defendants to disgorge their ill-gotten gains, if any, plus prejudgment interest thereon;

## VI.

Enter a Final Judgment imposing civil money penalties upon Defendants pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and/or Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e);

## VII.

Enter a Final Judgement imposing an officer and director bar against Shkreli pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e) and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2);

## VIII.

Enter a Final Judgement imposing an officer and director bar against Greebel pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2); and

## IX.

Grant such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated:          December 17, 2015
                New York, New York


*Sanjay Wadhwa*
Sanjay Wadhwa
Andrew M. Calamari
Gerald A. Gross
Paul G. Gizzi
Eric M. Schmidt
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0150 (Schmidt)
Email: SchmidtE@sec.gov