UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

    - against -

MARTIN SHKRELI,
EVAN GREEBEL,
MSMB CAPITAL MANAGEMENT LLC, and
MSMB HEALTHCARE MANAGEMENT LLC,

                Defendants.

15 Civ. 7175 (KAM)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## GOVERNMENT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS


ROBERT L. CAPERS
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

WINSTON M. PAES
ALIXANDRA E. SMITH
Assistant U.S. Attorneys
   (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply memorandum of law in further support of the government's motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of the parallel criminal case, United States v. MARTIN SHKRELI and EVAN GREEBEL, 15 CR 637 (KAM) (the "Criminal Case"), which has been filed in this district, and a related, ongoing grand jury investigation.[1]  Both defendants oppose the government's motion to stay, instead arguing for a so-called "limited stay" that would permit all document discovery and witness depositions to proceed in the Civil Case, with two exceptions: (1) depositions of individuals who would assert their Fifth Amendment right against self-incrimination – such as the defendants – would be stayed, and (2) the government may seek to prevent production of specific documents and/or the depositions of specific witnesses by articulating the precise reasons why such discovery would adversely affect the Criminal Case. The defendants contend that such a "limited stay" is "fair to the government, the Court and the defendant[s]" (Shkreli Br. at 1) because it "reasonably balances the concerns raised by the government with other significant interests."  (Greebel Br. at 1).

To the contrary, the defendants' proposal seeks to use targeted discovery in the Civil Case to gain an unlawful tactical advantage in the Criminal Case. On the one hand, the government would not only be required to furnish evidence to which the defendants would not otherwise be entitled at this stage of Criminal Case, but would be forced into extensive litigation to protect the disclosure of evidence that would prejudice the Criminal Case (such as the depositions

---

[1] Neither defendant challenges the government's right to intervene in the Civil Case pursuant to Federal Rule of Civil Procedure 24(a).  Consequently, the government's reply brief addresses only the defendants' opposition to the government's motion to stay discovery in the Civil Case.

1

of key trial witnesses), a process that would necessarily reveal its trial strategy. On the other hand, the defendants would be afforded protections broader even than those provided by the Fifth Amendment; not only would they be shielded from providing reciprocal discovery and from questioning, but – as their depositions would be stayed – they would not have to in fact assert the Fifth Amendment and suffer the attendant adverse consequences in the Civil Case. The use of civil discovery to game the system in this fashion is clearly contrary to law.

For these reasons, and the other reasons articulated herein, the government's request for a stay of discovery should be granted.

## ARGUMENT

As set forth in the government's opening brief, this Court has the inherent authority to stay the Civil Case. See Landis v. N. Am. Co., 299 U.S. 248 (1936). In determining whether to grant a stay in similar cases, district courts have utilized a balancing test that considers the following factors: (1) the overlap of issues between the civil and criminal case; (2) "the status of the case"; (3) "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay"; (4) "the private interests of and burden on the defendants"; (5) the interest of the court; and (6) "the public interest." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 99 (2d Cir. 2012); see also Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992) (setting forth similar factors in a slightly different formulation). However, the Second Circuit has observed that such tests serve only as a "rough guide," and do not replace a district court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Louis Vuitton, 676 F.3d at 99. A balancing of those factors here – along with a consideration of the equities, and in

2

particular the need to prevent asymmetrical discovery and to prevent witness intimidation – make it clear that a complete stay of discovery in the Civil Case is appropriate.

I.  A Complete Stay is Warranted, As Recognized by the Prevailing Case Law

The defendants broadly argue that a stay of civil discovery constitutes a "heavily disfavored, extraordinary remedy," and that there is a "growing, nationwide recognition that stays of discovery in parallel enforcement actions should be rare." (Greebel Br. at 4-5; see also Shkreli Br. at 3-5). Instead, the defendants contend that courts both within and outside the Second Circuit have taken a more "nuanced, modern approach" (Greebel Br. at 6) that is allegedly similar to the "limited stay" advocated by the defendants. In support of this position, both defendants lean heavily on two cases from the Southern District issued by Judge Jed Rakoff – Saad (in decisions reported as SEC v. Saad, 229 F.R.D. 90 (S.D.N.Y. July 23, 2005) ("Saad I") and SEC v. Saad, 384 F. Supp. 2d 692 (S.D.N.Y. 2005) ("Saad II") (collectively the "Saad cases")) and Gupta (in a decision reported as SEC v. Gupta, 11 Civ. 7566 (JSR), 2011 WL 5977579, at *1 (S.D.N.Y. Nov. 30, 2011)), as well as several other cases that have adopted Judge Rakoff's approach in whole or in part. See Shkreli Br. at 3-5; Greebel Br, at 5-7. The defendants then urge this Court to "join the growing trend away from blanket stays of discovery in [Securities and Exchange Commission ("SEC")] civil actions" (Greebel Br. at 8) and to instead impose the "limited stay" they have described.

As an initial matter, the stay of a civil SEC action pending the outcome of a parallel criminal case is neither an "extraordinary remedy" nor "heavily disfavored" based on the facts presented in this case. (Greebel Br. at 4). The language upon which defendant Greebel relies for this proposition is from Hicks v. City of New York, 268 F. Supp. 2d 238, 241, 243 (E.D.N.Y. 2003) – a case addressing a parallel civil and criminal cases in the § 1983 context – which the

3

defendant cites to for the proposition that "[a] stay of a civil case is an extraordinary remedy." (Greebel Br. at 5). However, the Hicks court went on to observe that "the strongest argument for granting a stay is where a party is under criminal indictment" because proceeding in both cases could prejudice one or both cases. Hicks, 268 F. Supp. 2d at 242. Many other courts have also acknowledged that the filing of a criminal indictment – as is the case here – dramatically impacts a court's analysis of whether a stay of civil proceedings is appropriate by weighing heavily in favor of such a stay, as codified in the "status of the case" factor set forth in Louis Vuitton and similar cases. See, e.g., SEC v. McGinnis et al., Case No. 14 Civ. 6, 2016 WL 591764, at *3-*4 (D. Vt. Feb. 12, 2016) (discussing how "status of the case" factor weighs in favor of a stay when a criminal indictment is imminent or has been filed, and granting defendant's request for a stay of a parallel SEC action over the SEC's objection); SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd., No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (same, and granting the government's motion for a stay over defendant's objection); accord Volmar Distributors, Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("[t]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter").

The defendants' argument that courts currently disfavor staying parallel SEC proceedings when a defendant raises an objection to the stay request and their reliance on the fact that the government cited several older cases as proof of such trend is not supported by the existing case law. (See Greebel Br. at 7). Indeed, even the defendants acknowledge that courts routinely grant stays under similar circumstances. (See Shkreli Br. at 3; Greebel Br. at 5-8). In fact, this is the precise reason for the defendants' substantial reliance on a set of outlier cases that include (and are primarily based upon the reasoning in) the Saad cases and Gupta. There are many recent cases

4

from this Circuit and others where courts have granted a government motion for a complete stay of civil discovery in a parallel SEC case over a defendant's objection.[2] See, e.g., Order Granting Mot. to Intervene and Stay Discovery, in SEC v. Dubovoy, 15 Civ. 06076 (MCA-MAH) (D.N.J. Jan. 29, 2016) (Dkt. No. 240) (granting government's request for a complete stay of the SEC action over the objection of two fugitive defendants indicted in parallel criminal cases in the District of New Jersey and the Eastern District of New York (see also Dkt. No. 152-1)); Global Indus., Ltd., 2012 WL 5505738, at *4 (granting government's request for a complete stay of the SEC action over the objection of a corporate defendant);[3] SEC v. Gordon, 09 Civ. 61 (CVE)

---

[2] As the defendants acknowledge, in many cases where parallel criminal and civil proceedings are underway, defendants either affirmatively seek, or otherwise consent to, the complete stay of civil discovery. See Greebel Br. at 7-8; see, e.g., SEC v. Kueber, No. 15 Civ. 4479 (ILG) (Dkt. No. 11) (complete stay granted where defendant consented); SEC v. Mulholland, No. 15 Civ. 3668 (ILG) (Dkt. No. 12) (complete stay granted where defendant took no position); SEC v. Bandfield, et al., No. 14 Civ. 5271 (ILG) (complete stay granted where defendants took no position); SEC v. Discala, et al., No. 14 Civ. 4346 (ENV) (Dkt. No. 15) (complete stay granted where all defendants consented); SEC v. Arias, No. 12 Civ. 2937, 2012 WL 4849151, at *1 (E.D.N.Y. Sept. 14, 2012) (defendants either consented to or did not object to the government's stay of discovery); SEC v. Boock, No. 09 Civ. 8261 (DLC), 2010 WL 2398918, at *1 (S.D.N.Y. June 15, 2010) (defendants sought and obtained stay of discovery over SEC's objections due to pending criminal proceedings).

[3] Defendant Greebel suggests that this case is "inapposite" because the corporate defendant objecting to the stay was not yet under indictment. (Greebel Br. at 8). This argument is misleading. In Global Indus., Ltd., the government moved to intervene in an existing SEC proceeding due to a pending grand jury investigation in the Eastern District of New York of the corporate defendant in the SEC case, as well as other co-conspirators. 2012 WL 5505738, at *1. The government admitted that it did not yet know whether it would bring charges against the corporate defendant or others, but requested a complete stay of the SEC proceeding in order to ensure the integrity of the criminal investigation. Id. at *2. Judge Ronnie Abrams applied the six-factor test, finding that the fact that the government had not yet indicted the defendant weighed against the stay, and nonetheless granted a complete stay of the SEC proceeding for a period of six months (the time the government stated it required to make a charging decision). Id. at *3, *6. In other words, the Global Indus., Ltd. case is one where the court found that a complete stay of the civil proceedings was warranted even before any criminal case was filed, circumstances far less favorable to the government than are presented here.

(FHM), 2009 WL 2252119, at *5-*6 (N.D. Okla. Jul. 28, 2009) (finding that the indicted defendant failed to demonstrate how he would be prejudiced by a stay and granting government's request for a complete stay of the SEC action); SEC v. Nicholas, 569 F. Supp. 2d 1065, 1069-73 (C.D. Cal. 2008) (finding that, over the objection of the individual indicted defendants, a "complete stay of the civil case is in the best interest of justice").  In these cases, the decision to grant a complete stay was based on facts similar to those present in this case: the significant overlap between the parallel criminal and civil proceedings; the fact that a criminal indictment was imminent or had already taken place; the public's interest in the "effective prosecution of those who violate the securities laws;" and the Court's interest in judicial economy and the desire to safeguard the criminal case from "the specific concerns against which the restrictions on criminal discovery are intended to guard," including the risk that disclosures in the parallel civil case beyond the scope permitted in the criminal case would lead to "perjury and manufactured evidence" and the "revelation of the identity of prospective witnesses."  Global Indus., Ltd., 2012 WL 5505738, at *3-*6; see also Gordon, 2009 WL 2252119, at *5-*6; Nicholas, 569 F. Supp. 2d at 1069-73.

Moreover, even the cases upon which the defendants rely do not support the so-called "limited stay" for which they advocate.  In many of the cases cited by the defendants, courts that initially declined to grant a complete stay thereafter stayed discovery when it became clear the defendant would invoke his or her Fifth Amendment rights and not participate in the very discovery process he or she sought to use affirmatively, or where the witnesses the defendant sought to depose would either assert their Fifth Amendment rights and/or testify for the government at a related criminal trial.  For example, in SEC v. Chakrapani, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) – a case cited by

6

defendant Greebel as one in which a court allowed discovery to proceed "beyond document production" (Greebel Br. at 5-6) – the court invited the government to renew its stay motion if either the defendant in the criminal proceeding or a witness determined to invoke the Fifth Amendment: "Of course, if [the defendant] or other relevant witnesses invoke their Fifth Amendment privileges not to participate in civil discovery, the Court's analysis regarding the propriety of a discovery stay might well be altered . . . . To the extent that the process is compromised by the legitimate invocation of a constitutional privilege during discovery, the balance of interests could turn in favor of a discovery stay pending completion of [the] criminal trial."  2010 WL 2605819 at *11.  One week after that decision was issued, the Court ordered the parties to appear for a status conference regarding a deposition notice served on a cooperating witness likely to invoke the Fifth Amendment and the effect of "[d]efendant's refusal to participate in discovery."  (Order dated July 6, 2010, Dkt. No. 125).  Following that conference, the Court endorsed a discovery schedule specifying that "[n]o depositions shall commence until the conclusion of the trial in the criminal case."  (Order dated Aug. 4, 2010, Dkt. No. 131).  Other district courts in this Circuit have taken a similar approach.  See SEC v. Cioffi, No. 08 Civ. 2457 (FB)(VVP) (Dkt. Nos. 19, 38 and 40) (denying a stay in the first instance, and then staying all depositions after the defendants advised the SEC that they would assert the Fifth Amendment); SEC v. Adondakis, No. 12 Civ. 409 (HB), 2012 WL 10817377, at *1 (S.D.N.Y. May 21, 2012) (same).

       Both circumstances are present here.  Neither defendant can credibly deny that he will assert his Fifth Amendment right if noticed for a deposition in this case, or perhaps even if he is required to respond to demands for answer and interrogatories.  In fact, just several weeks ago, defendant Shkreli asserted his Fifth Amendment right not to answer questions at a Congressional

7

hearing addressing drug pricing practices by Turing, a company founded by defendant Shkreli. In a letter, dated January 22, 2016, to members of the House of Representatives Committee on Oversight and Government Reform, defendant Shkreli's then-attorney represented that defendant Shkreli's decision to invoke was due to, inter alia, ongoing investigations by the Federal Trade Commission ("FTC") and the New York State Attorney General into Turing's practices. Given defendant's Shkreli's decision to assert the Fifth Amendment in the face of nascent criminal and civil investigations, there can be little question that he will choose a similar path in the Civil Case, as he is not merely under investigation for the same conduct in the Criminal Case, but has already been indicted.

Further, as a result of the defendants' Fifth Amendment considerations, it is clear that no civil trial will take place in advance of the criminal trial. Accordingly, the only reason the defendants are seeking discovery in the Civil Case is to obtain material to assist in the criminal trial – for instance, by garnering witness statements now, far in advance of any criminal trial, which they can use to tailor their defenses. As the court observed in Adondakis, a case in which the defendants sought immediate depositions even though they acknowledged they were not prepared to proceed with the civil trial, "it seems clear that the defendants are simply looking for information to be used in the criminal trial." 2012 WL 10817377, at *1. While it is the right of both defendants to assert the Fifth Amendment, they should not be allowed to use that assertion to shield themselves from participating in discovery in the Civil Case while nonetheless proceeding with asymmetrical discovery.

While the courts in some of the cases to which the defendants cite did permit some form of document discovery to move forward in a parallel civil case,[4] even those courts either barred depositions altogether or placed significant limitations on the defendants' ability to take depositions due to concerns ranging from the implication of asymmetrical discovery; other witnesses' Fifth Amendment rights; and the impact of such depositions on the parallel criminal case. See, e.g., Adondakis, 2012 WL 10817377 at *1; SEC v. Doody, 186 F.Supp.2d 379, (S.D.N.Y. 2012) (in a case against a civil defendant who was not charged in the related criminal case and had not asserted his Fifth Amendment rights, allowing document discovery to proceed but staying (1) Rule 26(a)(i)(A) discovery, (2) disclosure of prior transcripts of interviews of any potential criminal trial witnesses, and (3) depositions of any such witnesses); see also SEC v. Schiff et al., No. 05 Civ. 4132 (FSH), 2006 WL 2690266 (D.N.J. Sept. 19, 2006) (affirming decision of magistrate judge to permit document discovery but stay all depositions, over indicted defendants' objections, in order to prevent defendants from "circumvent[ing] the more restrictive rules that apply to discovery in criminal cases while asserting their Fifth Amendment privilege to avoid testifying or producing documents").

Even in the two cases that form the backbone of the defendants' arguments, the defendants' ability to take depositions of witnesses was greatly restricted. In the Saad case, Judge Rakoff permitted the government to object to depositions on a witness-by-witness basis and to submit briefing in camera to support such objections. See Saad II, 384 F.Supp.2d at 693. Employing this method, he first stayed the depositions of six witnesses in the civil case, two of whom were likely to assert the Fifth Amendment and four of whom likely to testify in the criminal

---

[4] As detailed infra in Section III, in compliance with its Rule 16 obligations, the government has already produced to the defendants a significant number of documents it received from the SEC, and will continue to do so, on a rolling basis.

9

trial, see Saad I, 229 F.R.D. at 91; in a subsequent decision, Judge Rakoff articulated additional circumstances that might lead to staying depositions, including where "there is a genuine reason to believe that a witness may be subject to harassment," where a witness might "serve as a rebuttal witness to what the Government has reason to believe may be a fabricated defense," or where a witness that is "materially relevant to the criminal case" has only "peripheral significance to the civil case."  See Saad II, 384 F.Supp.2d at 693.  By the time of the Gupta case, six years later, Judge Rakoff adopted a more categorical approach, staying all civil depositions "until after the conclusion of the criminal trial" except of "persons the Government has indicated it is unlikely to call as witnesses at the forthcoming criminal trial."  SEC v. Gupta, 2011 WL 5977579, *1 (emphasis added).

In sum, then, a complete stay of discovery – even over the objections of defendants – is an approach that is both grounded in the prevailing case law and warranted given the specific circumstances of this case, which are discussed in additional detail in the following sections.  By contrast, the "limited stay" approach advocated by the defendants would allow them to obtain discovery from the SEC and third parties far in excess of what they would otherwise be entitled to in the criminal case, while at the same time shielding themselves from having to produce any discovery, answer interrogatories, or sit for a deposition.  Furthermore, such an approach would be incredibly time-consuming for the parties and the Court, as the government would need to review and then litigate all document and deposition requests that might touch on the Criminal Case.

II.      Potential for Witness Intimidation Counsels in Favor of a Complete Stay of Discovery

As the government argued in its opening brief, one reason to stay parallel civil proceedings is to avoid the early disclosure of information that would not normally be available

10

until the late stages of a criminal case, in order to limit the potential for witness intimidation and the concealment or destruction of evidence. See, e.g., Global Indus., Ltd., 2012 WL 5505738 at *6; SEC v. Nicholas, 569 F. Supp. 2d at 1072; Nakash v. United States Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962). Here, both defendants are highly dismissive of such concerns. Defendant Shkreli contends that there is "little risk to the integrity of the criminal case if the civil proceeding continues," (Shkreli Br. at 7) and defendant Greebel similarly argues that "there is no reason to believe" that he "poses any risk" to the "sanctity of the evidence in the case" (Greebel Br. at 9-10).[5]

As an initial matter, there is no requirement that the government make a particularized showing that a defendant might tamper with witnesses or evidence in order for this factor to weigh in favor of a stay. Courts have found that the mere potential for such corruption of a criminal case counsels favor of a complete stay even when there is no evidence that the parties to the civil case might engage in improper activities. See, e.g., SEC v. Nicholas, 569 F. Supp. 2d at 1072 & n.8 (identifying the potential for tampering with witnesses or evidence as a factor weighing in favor of a stay of a parallel SEC proceeding, while specifically noting that "the Court does not suggest that the Defendants seek civil discovery for an illegal or unethical purpose"); accord United States v. McCarthy, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see [witness] statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement"). However, where courts have found that

---

[5] Defendant Greebel also asserts that any such concerns are "theoretical" because defendant Greebel, unlike defendant Shkreli, has not yet "sought discovery in the instant case." (Greebel Br. at 9). It is the government's understanding that should the Court adopt defendant Greebel's proposed "limited stay" approach, that defendant Greebel would in fact seek discovery in the Civil Case, as indicated elsewhere in defendant Greebel's filing. See, e.g., Greebel Br. at 14 (asking the Court to "accommodat[e]" defendant Greebel's "desire to discover information through civil discovery").

11

there is evidence of a defendant's potential misconduct, that factor weighs even more strongly in favor of a complete stay. See, e.g., Global Indus., Ltd., 2012 WL 5505738 at *6 (finding it "compelling" that a corporate defendant who was alleged to have been formed to conceal evidence might seek to conceal or destroy evidence, or intimidate witnesses, based on discovery in the civil case, and finding this to be a factor weighing in favor of a complete stay).

Here, there is evidence that defendant Shkreli has taken steps to intimidate or threaten individuals in the past. In early 2013, following Retrophin's reverse merger with the shell company Desert Gateway that resulted in Retrophin becoming a publicly-traded company, defendant Shkreli had a disagreement with Timothy Pierotti, a former Retrophin employee who had received certain free-trading shares in the new company as part of a personal agreement between defendant Shkreli and Pierotti. When defendant Shkreli insisted that Pierotti return the shares and Pierotti refused, Shkreli undertook a campaign of harassment to try and force Pierotti to return the shares. As set forth in documents that were publicly filed in a lawsuit, and as widely reported in the press, defendant Shkreli contacted Pierotti and members of his family (including his children) in a series of threatening phone calls, letters and emails, and via social media. See, e.g., Dan Mangan, Controversial drug CEO was accused of serious 'harassment', CNBC Healthcare (Sept. 22, 2015, 1:35p.m.), http://www.cnbc.com/2015/09/22/controversial-drug-ceo-was-accused-of-serious-harassment.html. In one of the letters sent to Pierotti's wife, Shkreli wrote: "Your husband had stolen $1.6 million from me and I will get it back. I will go to any length necessary to get it back . . . Your pathetic excuse of a husband needs to get a real job that does not depend on fraud to succeed . . . I hope to see you and your four children homeless and will do whatever I can to assure this." Id. Pierotti reported defendant Shkreli's conduct to the police, and the lawsuit was subsequently settled. Id.

Defendant Shkreli has not only admitted to this conduct, he has bragged about it publicly. In an interview given in December 2015, which was published the day before his arrest in the Criminal Case, Shkreli made the following statements about his harassment of Pierotti:

Shkreli: Did you see that thing where I threatened that dude and his [expletive] kids, right?

Interviewer: I did.

Shkreli: That was over $3 million, I want to say. He had to call the police, that guy. There's a little "Shmurda" in me, too. [Laughs] People that know me know that there's a little Bobby-equivalent in my blood, too. That comes from growing up on the edge of the hood, I would say. I've had guns pointed at me. I've had tons of that shit happen. I know that world. Not knee deep, but know it enough to know what it is. I'm definitely the real [expletive] deal. This is not a [expletive] act. I threatened that [expletive] guy and his [expletive] kids because he [expletive] took $3 million from me and he ended up paying me back. He called my bluff. He said, "You're not [expletive] going to go after me." [I said] "Yes I [expletive] will." I had two guys parked outside of his house for six months watching his every [expletive] move. I can get down.

Justin Hunte, Martin Shkreli Plans To Bail-Out Bobby Shmurda, HipHopDx.com (Dec. 16, 2015, 4:13 p.m.), http://hiphopdx.com/interviews/id.2825/title.martin-shkreli-plans-to-bail-out-bobby-shmurda.

In interviews with the government, several witnesses have advised that have been threatened by defendant Shkreli in connection with past disputes they had with defendant Shkreli, whether of a personal or professional nature. Several witnesses have also stated that they are concerned that defendant Shkreli may retaliate against them, and a number have cited specifically to defendant Shkreli's harassment of Pierotti as part of the basis for their concerns. In addition, at least one witness has advised the government that defendant Shkreli reached out to him or her in

13

the spring of 2015 – after defendant Shkreli learned of the criminal investigation – and suggested that the witness agree to a false version of certain events.[6]

Even if there were no particularized concern regarding witness intimidation, a stay of discovery would be appropriate given the inherent interest in protecting the integrity of the Criminal Case and the ongoing grand jury investigation, and preventing coordination or tailoring of witness testimony before trial. The government's well-founded concern of witness intimidation based on defendant Shkreli's past behavior, however, leans heavily in favor of finding that a stay is appropriate.

III.   Prejudice Concerns Set Forth by Defendants are Overstated

Finally, the defendants' complaints of prejudice are overstated. First, in compliance with its Rule 16 obligations, the government will produce to the defendants in discovery all of the documents it has received from the SEC pursuant to a sharing order. In fact, the government has already produced a significant number of such documents, as detailed in the cover letter accompanying its discovery production on January 15, 2016. See Dkt. No. 21 at 2-3 (listing records received by the SEC from various entities). These documents, along with documents that the government has and will continue to produce from other sources, constitute the core of the securities fraud, wire fraud and investment advisor fraud charges at issue in both the Civil and Criminal Cases, and will allow the defendants to prepare for the Civil Case while the Criminal Case is ongoing.

---

[6] The government is aware that lawyers from Arnold & Porter LLP, former counsel for defendant Shkreli, contacted many potential witnesses in this case in the spring, summer and fall of 2015 to see if they would be willing to speak to counsel about the case. The government is not referring to these contacts, but rather to contacts that Shkreli made directly to the witness.

Second, the defendants' stated concern that their failure to quickly resolve the Civil Case will cause "ongoing harm" to their personal and professional reputations is misdirection. (Shkreli Br. at 6-7; Greebel Br. at 13). As discussed above, given the defendants' Fifth Amendment considerations, the Civil Case will not be resolved while the Criminal Case is ongoing, and the defendants cannot plausibly claim that they are suffering greater reputational harm from the civil charges brought in this case than from the fact that they have been indicted in the Criminal Case. A number of courts that have granted complete stays of discovery have addressed similar arguments, and have responded that allowing parallel civil proceedings to move forward would distract the government, defendant(s) and the court from the related criminal proceedings, which are of "greater relative importance." Nicholas, 569 F. Supp. 2d at 1072-73 ("the foremost concern of the Court is for the parties to devote their time, energy and resources towards preparing for the criminal trial"); Gordon, 2009 WL 2252119, at *5-*6 ("[i]t seems [the defendant] might stand to benefit from proceeding with the criminal case first" in order to avoid implicating the defendant's Fifth Amendment rights and the "distraction of defending himself in a civil action while facing serious criminal charges … [i]n fact, defendants … often seek to stay the civil proceedings for these very reasons").

Finally, the Court should reject the defendants' argument that discovery in the Civil Case should proceed because the length and complexity of the criminal proceedings will significantly delay the Civil Case. (Shkreli Br. at 7; Greebel Br. at 10). It was the defendants who requested a three-month adjournment of the Criminal Case at the last status conference. The government agreed to this request despite its desire to set an earlier status date; it would not have done so had it known the defendants would seek to use the timing of the Criminal Case to oppose this motion. The defendants cannot both slow the progress of the Criminal Case and

15

simultaneously complain that because it will not be resolved quickly, the Civil Case should move forward virtually unchecked. The government is willing to set a motion schedule and a trial date in the Criminal Case forthwith in order to ensure that the Criminal Case is not further delayed.

## CONCLUSION

In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting this motion for a stay. In the interests of permitting the government to complete its prosecution in the Criminal Case, as well as the ongoing criminal investigation, the government respectfully requests that its motion for a stay of civil proceedings in the Civil Case be granted.

Dated: Brooklyn, New York
       February 18, 2016

                                       Respectfully submitted,

                                       ROBERT L. CAPERS
                                       United States Attorney

                                       _____/s/_____
                                       Winston M. Paes
                                       Alixandra E. Smith
                                       Assistant U.S. Attorneys
                                       (718) 254-6023 (Paes) / 6370 (Smith)

Cc: Clerk of the Court (KAM)
      All Counsel (By ECF)