UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        - against -

MARTIN SHKRELI;
EVAN GREEBEL;
MSMB CAPITAL MANAGEMENT LLC; and
MSMB HEALTHCARE MANAGEMENT LLC,

        Defendants.
-------------------------------------------X

**MEMORANDUM & ORDER**

15-CV-7175 (KAM) (RML)

**MATSUMOTO, United States District Judge:**

In this civil action, commenced on December 17, 2015, the Securities and Exchange Commission ("SEC") alleges that defendants Martin Shkreli ("Shkreli") and Evan Greebel ("Greebel") participated in multiple fraudulent schemes in violation of the securities laws. On December 14, 2015, a grand jury in the Eastern District of New York returned an indictment charging Shkreli and Greebel with essentially the same conduct alleged in the SEC complaint. The United States, through the United States Attorney in the Eastern District of New York (the "government"), has moved to intervene in this action in order to seek a complete stay of discovery pending the outcome of the criminal proceedings. For the reasons stated herein, the government's motion is GRANTED.

<u>BACKGROUND</u>

On December 14, 2015, the government filed a sealed indictment charging Shkreli and his former attorney Greebel with

criminal conspiracy and securities fraud. (*See* No. 15-CR-637, ECF No. 1 ("Indictment").) Shkreli was individually charged with two counts of conspiracy to commit securities fraud, two counts of conspiracy to commit wire fraud, and two counts of securities fraud. (*Id.* at ¶¶ 36-49.) Shkreli and Greebel were also charged together with one count of conspiracy to commit wire fraud. (*Id.* at ¶¶ 50-51.) Three days later, on December 17, 2015, the indictment was unsealed. (*See* No. 15-CR-637, ECF No. 2.) That same day, the SEC filed a civil complaint in this action alleging violations of the securities laws by Shkreli, Greebel, and the investment advisers to two hedge funds founded and managed by Shkreli: MSMB Capital Management LP ("MSMB Capital") and MSMB Healthcare LP ("MSMB Healthcare").[1] (No. 15-CV-7175, ECF No. 1 ("SEC Compl.").)

The civil and criminal actions address, with some variations, essentially the same three allegedly fraudulent schemes. First, the indictment and the complaint allege that Shkreli made material misrepresentations to investors and potential investors in MSMB Capital about the fund's investment performance, its assets under management, and the retention of an independent auditor and professional administrator. (Indictment at

---

[1] MSMB Capital Management LLC was the investment adviser to MSMB Capital, while MSMB Healthcare Management LLC was the investment adviser to MSMB Healthcare. (SEC Compl. at ¶ 2; ECF No. 10, Shkreli Answer.) Shkreli was the managing member of both investment advisers. (SEC Compl. at ¶ 2; ECF No. 10, Shkreli Answer.)

¶¶ 7(a), 8-15; SEC Compl. at ¶¶ 2-3, 24-36, 42-45.) Second, the indictment alleges that Shkreli engaged in substantially similar activity in connection with MSMB Healthcare (Indictment at ¶¶ 7(b), 16-20), while the SEC complaint focuses on Shkreli's alleged misappropriation of MSMB Healthcare funds to settle both his own debts and those of MSMB Capital. (SEC Compl. at ¶¶ 37-41, 46-47.) Finally, the indictment and complaint allege that Shkreli and Greebel conspired to engage in wire fraud by fraudulently diverting assets held by Retrophin LLC ("Retrophin") — a biopharmaceutical company founded and taken public by Shkreli — to pay off liabilities incurred by Shkreli, MSMB Capital, and MSMB Healthcare. (Indictment at ¶¶ 6, 7(c), 21-35; SEC Compl. at ¶¶ 2-3, 46-55.)

After the SEC action was filed and the criminal indictment was unsealed, the government promptly moved to intervene in the instant SEC civil action in order to seek a stay of the civil action pending the outcome of the parallel criminal proceedings and filed a memorandum in support of that motion. (ECF No. 12 ("Gov't Mem.").) Shkreli and Greebel[2] separately opposed that motion, arguing that certain discovery should proceed in this action. (ECF Nos. 22 ("Shkreli Opp'n"), 23 ("Greebel Opp'n").) The SEC subsequently filed a brief opposing Greebel's discovery

---

[2] Greebel requested oral argument in his opposition memorandum but did not reiterate that request in his sur-reply.

proposal. (ECF No. 25 ("SEC Opp'n").) The government replied to both Shkreli and Greebel. (ECF No. 26 ("Gov't Reply").) Finally, the court granted both Shkreli and Greebel the opportunity to file sur-replies. (ECF Nos. 29 ("Shkreli Sur-Reply"), 30 ("Greebel Sur-Reply").)

## DISCUSSION

The court will independently analyze the two issues raised by the government's motion. First, the court will address the unopposed request by the government to intervene in this action. Second, the court will address the government's request for a complete stay of this action.

## I.   Intervention

The government has moved to intervene in this action, arguing that it may do as a matter of right or alternatively on a permissive basis. (*See* Gov't Mem. at 4-8.) The request to intervene is unopposed, but the court nonetheless will address the government's motion.

Under Federal Rule of Civil Procedure 24, a party may intervene in a civil action either as a matter of right or on a permissive basis. Intervention as of right is appropriate when, upon a timely motion, a party seeking to intervene

> claims an interest relating to the property or
> transaction that is the subject of the action, and is so
> situated that disposing of the action may as a practical
> matter impair or impede the movant's ability to protect

4

its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Mortgage Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383 (E.D.N.Y. 2003) ("In order to intervene as of right under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise protected." (citations omitted)).

Intervention as of right is appropriate in this case under Rule 24(a)(2). First, the SEC complaint was filed on December 17, 2015 and the government moved to intervene in a timely manner on January 25, 2016, just over a month later. (*See* ECF Nos. 1, 12.) *See Gulino v. Bd. of Educ.*, No. 96-CV-08414, 2009 WL 2972997, at *3 (S.D.N.Y. Sept. 17, 2009) ("Movants filed their motion just one month after the case was reassigned within the District Court, so it is timely."). Second, the government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). Third, further proceedings in this action could impair the government's interest in limiting the defendants to the discovery available under the Federal Rules of Criminal Procedure. Finally, although the interests of the SEC and the

government certainly converge to some extent, the government is uniquely focused on the enforcement of criminal statutes. *See S.E.C. v. Downe*, No. 92-CV-4092, 1993 WL 22126, at \*12 (S.D.N.Y. Jan. 26, 1993) ("[E]ven though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest."). Accordingly, intervention as of right is appropriate in this action.

Alternatively, the court concludes that permissive intervention under Federal Rule of Civil Procedure 24(b)(1) is appropriate. Rule 24(b)(1) provides that, upon a timely motion, a court "may" permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "'Permissive intervention is wholly discretionary with the trial court.'" *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529, 2016 WL 845333, at \*2 (S.D.N.Y. Mar. 2, 2016) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)); *see also St. John's Univ., New York v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention . . . .").

In this case, there are significant overlaps between the SEC complaint and the indictment in the criminal case. Defendants are alleged to have perpetrated a scheme to defraud investors in

6

MSMB Capital and MSMB Healthcare, and then use Retrophin as a vehicle to pay off debts owed both by Shkreli and the two hedge funds. (*Compare* Indictment at ¶ 7, *with* SEC Complaint at ¶¶ 2-3.) Both actions share a great number of common legal and factual questions, which militates strongly in favor of permissive intervention. *See Downe*, 1993 WL 22126, at *11 (granting permissive intervention where criminal investigation and corresponding SEC action arose "out of common questions of law and fact"); *see also Chestman*, 861 F.2d at 50 (concluding that it was not an abuse of discretion to permit the government to intervene, either as of right or on a permissive basis, to seek a stay of civil discovery in parallel SEC action). Permissive intervention is therefore appropriate.

Accordingly, the government's motion to intervene in this action is GRANTED.

## II. **Stay**

Having granted the government's motion to intervene, the court turns next to the parties' dispute over the government's request for a complete stay of this civil action. (Gov't Mem. at 8-14.) "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N.*

*Am. Co.*, 299 U.S. 248, 254 (1936)). Exercising that inherent power,

federal courts "have deferred civil proceedings pending the

completion of parallel criminal prosecutions when the interests of

justice seemed to require such action, sometimes at the request of

the prosecution, sometimes at the request of the defense."[3] *United

States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted)

(collecting cases). The party "seeking a stay bears the burden of

establishing its need." *S.E.C. v. McGinnis*, No. 14-CV-6, 2016 WL

591764, at *3 (D. Vt. Feb. 12, 2016) (internal quotation marks and

citation omitted).

Courts employ a variety of different tests to evaluate

the propriety of staying civil proceedings. The Second Circuit has

explained that these various tests are not "mechanical devices for

churning out correct results in overlapping civil and federal

proceedings," and has accordingly cautioned that the

---

[3] Indeed, criminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination. *See Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 46 (2d Cir. 2013) ("We also presume that parallel civil and criminal proceedings can sometimes burden the exercise of the Fifth Amendment privilege against self-incrimination."); *S.E.C. v. McGinnis*, No. 14-CV-6, 2016 WL 591764, at *3 (D. Vt. Feb. 12, 2016) ("Defendants additionally point out that proceeding in the instant case may compromise their Fifth Amendment rights to the extent not already waived . . . ."); *S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) ("Often the [stay application filed by the criminal enforcement agency] is joined by the defendant as well, who otherwise confronts the prospect of expensive dual litigation and the dilemma either of having to testify in a pre-trial deposition or, by invoking the privilege against self-incrimination, subjecting himself to a permissible adverse inference in the civil case." (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

appropriateness of a stay ultimately rests within the sound
judgment of the district court "based on the particular facts
before it and the extent to which such a stay would work a hardship,
inequity, or injustice to a party, the public or the court." *Louis
Vuitton*, 676 F.3d at 99; *see also McGinnis*, 2016 WL 591764, at *3.
In making determinations about stays, courts often consider:

> 1) the extent to which the issues in the criminal case
> overlap with those presented in the civil case; 2) the status
> of the case, including whether the defendants have been
> indicted; 3) the private interests of the plaintiffs in
> proceeding expeditiously weighed against the prejudice to
> plaintiffs caused by the delay; 4) the private interests of
> and burden on the defendants; 5) the interests of the courts;
> and 6) the public interest.

*Louis Vuitton*, 676 F.3d at 99. The court turns to a holistic
consideration of these factors, mindful that none is dispositive.

A.    Overlap of the Issues

The first factor to be examined is the overlap of the
issues in the criminal and civil cases. Courts have consistently
recognized this as a particularly significant factor. *See Harris
v. Nassau Cnty.*, No. 13-CV-4728, 2014 WL 3491286, at *3 (E.D.N.Y.
July 11, 2014) ("The most important factor at the threshold is the
degree to which the civil issues overlap with the criminal
issues."); *In re 650 Fifth Ave.*, No. 08-CV-10934, 2011 WL 3586169,
at *3 (S.D.N.Y. Aug. 12, 2011) (same); *Stamile v. Cnty. of Nassau*,
No. 10-CV-2632, 2011 WL 1754125, at *4 (E.D.N.Y. Jan. 31, 2011)
(same). Where there is overlap, there is a greater concern about

self-incrimination. By contrast, if "there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

As discussed above in the court's permissive intervention analysis, even a cursory side-by-side examination of the criminal indictment and the civil complaint reveals that the alleged wrongdoing is essentially the same. (*Compare, e.g.*, Indictment at ¶ 7(a) (allegation that Shkreli and Greebel participated in a "scheme to defraud investors and potential investors in MSMB Capital by inducing them to invest in MSMB Capital through material misrepresentations and omissions about, *inter alia*, the prior performance of the fund, its assets under management and the retaining of an independent auditor and administrator"), *with* SEC Complaint at ¶ 3(b) (allegation that Shkreli "made material misrepresentations to investors and potential investors in MSMB [Capital], including statements (i) exaggerating MSMB [Capital's] investment performance, (ii) inflating the amount of MSMB [Capital's] assets under management, and (iii) falsely stating that MSMB [Capital] had retained an independent auditor and a professional administrator"); *compare also, e.g.*, Indictment at ¶ 7(c) (allegation that Shkreli and Greebel misappropriated Retrophin assets by, *inter alia*, entering "into sham consulting agreements with other defrauded MSMB

10

Capital, MSMB Healthcare and Elea Capital[4] investors as an alternative means to settle liabilities owed by the MSMB Funds and SHKRELI"), *with* SEC Complaint at ¶ 3(d) ("Shkreli, aided and abetted by Greebel . . . fraudulently induced Retrophin to issue Retrophin stock and make cash payments to certain disgruntled investors in Shkreli's hedge funds by having the investors enter into agreements with Retrophin that misleadingly stated that the payments were for consulting services, when in fact the payments were for the release of potential claims against Shkreli.").) The substantial similarity and overlap of the allegations in the two proceedings strongly weigh in favor of granting a stay.

B.    The Status of the Case

The second factor to be considered is the status of the parallel criminal proceeding. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) (citation omitted); *see also Louis Vuitton*, 676 F.3d at 101 (recognizing that indictment in parallel criminal proceeding "supported the entry of a stay"); *Trustees of Plumbers*, 886 F. Supp. at 1139 ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . ."); *Volmar Distributors, Inc. v. New York Post Co.*,

---

[4] The indictment alleges that Elea Capital was a hedge fund managed by Shkreli from 2006 to 2007. (Indictment at ¶ 1.)

152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." (citations omitted)). On the other hand, if "no indictment has been returned and no known investigation is underway, the case for a stay of discovery, no matter at whose instance, is 'far weaker.'"[5] Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 204 (1990) (quoting *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

Here, both defendants have been indicted. (*See* Indictment). Accordingly, this factor weighs in favor of a stay of the civil proceeding. *See Harris*, 2014 WL 3491286, at \*4 ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." (internal quotation marks and citation omitted)).

---

[5] Even where an indictment has not yet issued, courts have held that the "status of the case" factor can favor a stay. See *McGinnis*, 2016 WL 591764, at \*4 (concluding that the Department of Justice's representation to defense counsel "that an indictment will be forthcoming at some point in the near future" was sufficient to tip the "status of the case" factor in favor of a stay); *see also Louis Vuitton*, 676 F.3d at 100 n. 14 (recognizing that it is appropriate to consider "whether a prosecution is likely and imminent as opposed to a remote or purely hypothetical possibility" when considering whether to stay an action).

C.   SEC Interests

The third factor looks to the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay. The SEC has not affirmatively joined the government's stay application, but instead "takes no position on the government's motion to stay, and therefore does not oppose the motion." (SEC Opp'n at 1.) Accordingly, this factor has no bearing on the analysis. *See S.E.C. v. Treadway*, No. 04-CV-3464, 2005 WL 713826, at *2-3 (S.D.N.Y. Mar. 30, 2005) (noting, in case where New York State Attorney General sought a stay of SEC proceedings until the conclusion of a parallel criminal cases, that the SEC — which took no position on the stay — "has not articulated an interest that requires consideration"); *see also S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11-CV-6500, 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) ("The SEC, the Plaintiff in the Civil Case, does not oppose the U.S. Attorney's Motion. This position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one."); *S.E.C. v. Syndicated Food Serv. Int'l*, No. 04-CV-1303 (E.D.N.Y. Aug. 26, 2004), ECF No. 64, at 7 ("[A] stay of discovery would not prejudice the plaintiffs in the civil case, as evidenced by the fact that the SEC does not oppose the government's motion.").

The SEC, however, vigorously objects to Greebel's application for a "one-sided" limited stay that "would permit Defendants to obtain discovery while shielding Defendants from having to provide discovery themselves," and urges the court to "reject Greebel's proposal as . . . unreasonable and patently unfair." (SEC Opp'n at 1.)

D.    Defendants' Interests

The fourth factor considers the private interests and burden on the defendants should a stay be imposed. Shkreli argues that he has a "compelling need to put this significant civil matter behind him." (Shkreli Opp'n at 7.) Greebel argues that he will be prejudiced because, *inter alia*, "[m]emories fade, and memories of some of these older allegations may be gone altogether if discovery is stayed until after the criminal case." (Greebel Opp'n at 13.)

The court agrees that this factor favors defendants, and is sympathetic to defendants' desire to resolve both their criminal and civil cases. The court is prepared to set a trial date at the next status conference in May in the criminal case. Concerns about the potential loss of evidence and about the significance of the civil litigation are legitimate. *See, e.g., Trustees of Plumbers*, 886 F. Supp. at 1140 ("Plaintiffs have a legitimate interest in the expeditious resolution of their case and their argument that they could face prejudice from a stay through loss of evidence is well-taken."); *S.E.C. v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005)

14

(characterizing SEC civil action as "very serious"). On the other hand, the court notes the government's representation that it is ready to set a trial date, and that defendants' counsel, who have been substituted for the original counsel (No. 15-CR-637, ECF Nos. 31-33, 37-39; No. 15-CV-7175, ECF Nos. 16-21), requested time to evaluate the government's discovery and prepare for trial. (No. 15-CR-637, Minute Entry for 2/3/2016 Proceedings.)

E.    Court's Interests

The fifth factor to consider is the interest of the court. In evaluating their own interests, courts often look to the "convenience of the court in the management of its cases" as well as the "efficient use of judicial resources." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (internal quotation marks and citations omitted); *see also Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, No. 06-CV-243, 2006 WL 2585612, at *2 (S.D.N.Y. Sept. 8, 2006) (same).

In this case, the court has a strong interest in the efficient resolution of the both the criminal and civil cases. The civil case is "likely to benefit to some extent from the [c]riminal [c]ase no matter its outcome." *Glob. Indus., Ltd.*, 2012 WL 5505738, at *4. For example, evidence gathered and presented during the criminal prosecution can be used in the civil action. Greebel notes in his initial opposition brief that the government may object to civil discovery, including subpoenas, requests for production and

15

deposition testimony in the civil case, thus requiring judicial resources to resolve discovery disputes. (Greebel Opp'n at 4.) Greebel further asserts in his sur-reply that he has not determined whether he would invoke his Fifth Amendment rights in the civil action (Greebel Sur-Reply at 4-5), and that relitigation of Judge Weinstein's privilege-related decisions in the criminal matter may affect his ability to testify in the civil action. Greebel also states that he does not object to "postponing the dates on which the SEC must submit certain initial disclosures and respond to interrogatories and requests for admission until after the criminal trial." (*Id.* at 5.) It is clear from Greebel's proposal for limited civil discovery that judicial resources would be required to resolve the civil discovery disputes that he anticipates.

A stay of the civil action while the criminal case moves forward "would avoid a duplication of efforts and a waste of judicial time and resources." *S.E.C. v. Gordon*, No. 09-CV-61, 2009 WL 2252119, at *5 (N.D. Okla. July 28, 2009); *see also Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) ("By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination."); *Volmar*, 152 F.R.D. at 42 (granting complete stay

16

of civil proceedings pending outcome of parallel criminal prosecutions in part to "avoid duplication of effort and unnecessary litigation costs"). Accordingly, the court's interests favor a stay.

F.    Public Interest

The final factor to consider is the public interest. Where the government and the SEC proceed in parallel actions,[6] it can be difficult to discern whether the public has a stronger interest in the criminal or the civil litigation. Ultimately, the court concludes that the public's interest in the effective enforcement of the criminal law is the paramount public concern. Although the public "certainly has an interest in the preservation of the integrity of competitive markets," the "pending criminal prosecution serves to advance those same interests." *Volmar*, 152 F.R.D. at 40; *see also McGinnis*, 2016 WL 591764, at *5 (granting stay of SEC action in part because the "public's interest in the integrity of the [parallel] criminal case is entitled to precedence over the civil litigant" (internal quotation marks and citation omitted)); *Treadway*, 2005 WL 713826, at *4 ("It is in the public interest . . . to prevent circumvention of the limitations on discovery in the criminal proceedings."); *Morris v. Am. Fed'n of*

---

[6] The court finds no fault in the SEC's commencement of the civil action at or around the time the criminal indictment was unsealed, given the SEC's independent mandate to enforce the securities laws and the need to commence an action before expiration of the statute of limitations.

*State, Cnty. & Mun. Emps.*, No. 99-CV-5125, 2001 WL 123886, at *2
(S.D.N.Y. Feb. 9, 2001) ("The public has an interest in ensuring
the criminal discovery process is not subverted.").

The factors outlined by the Second Circuit
overwhelmingly favor a stay in these circumstances. The
substantial overlap of the issues in the two actions; the post-
indictment status of the criminal case; the SEC's lack of
opposition to the government's proposed stay; the court's interest
in the efficient resolution of the two proceedings; and the strong
public interest in vindication of the criminal law all weigh in
favor of a stay of the SEC's civil action.

The court is cognizant of a line of decisions refusing
to completely stay proceedings in an SEC-initiated civil action
pending the outcome of a parallel criminal action. *See S.E.C. v.
Gupta*, No. 11-CV-7566, 2011 WL 5977579, at *2 (S.D.N.Y. Nov. 30,
2011); *S.E.C. v. Cioffi*, No. 08-CV-2457, 2008 WL 4693320, at *2
(E.D.N.Y. Oct. 23, 2008); *Saad*, 229 F.R.D. at 92. Defendants argue
that these decisions reveal an emerging jurisprudential trend away
from granting blanket stays in circumstances like those present in
this case. Including the many recent decisions discussed
throughout the court's analysis, however, numerous courts both in
this circuit and others — as the government correctly points out
— have granted complete stays of SEC actions during the pendency
of parallel criminal proceedings, even over a defendant's

18

objection. *See, e.g.*, *S.E.C. v. Dubovoy*, No. 15-CV-6076 (D.N.J. Jan. 29, 2016), ECF No. 240; *Glob. Indus., Ltd.*, 2012 WL 5505738, at *6; *Gordon*, 2009 WL 2252119, at *5; *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1069-73 (C.D. Cal. 2008).

## **CONCLUSION**

The court concludes that a complete stay is appropriate in these circumstances. Accordingly, the SEC action is stayed pending the resolution of the criminal proceedings against both defendants. The parties are invited to set a trial date at the next status conference in the criminal case. Although Shkreli has already answered the SEC complaint (*see* ECF No. 10), Greebel need not do so until the stay is lifted.