UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        vs.

MARTIN SHKRELI, EVAN GREEBEL,
MSMB CAPITAL MANAGEMENT LLC, and
MSMB HEALTHCARE MANAGEMENT
LLC,

                              Defendants.

No. 1:15-cv-07175 (KAM) (RML)

**DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN
OPPOSITION TO THE SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR AN OFFICER AND DIRECTOR BAR AND
CIVIL MONETARY PENALTIES**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.      A TEN-YEAR BAR IS SUFFICIENT IN THIS CASE. ........................................... 4

      A.      The Patel Factors Counsel Against the Imposition of a Lifetime Bar. ................. 4

              1.      Mr. Shkreli is a first-time offender. ......................................................... 5

              2.      The likelihood the misconduct will recur is low........................................ 6

              3.      The remaining Patel factors. ..................................................................... 7

      B.      Courts Have Imposed Time-Limited Bars Against More Culpable or
             Comparable Defendants........................................................................................ 8

               1.      Elizabeth Holmes of Theranos received a ten-year bar. ........................... 8

              2.      Edward DiMaria of Bankrate, Inc. received a five-year bar.................... 11

              3.      Gregory Earls of U.S. Technologies, Inc. received a twenty-year
                   bar. .......................................................................................................... 12

              4.      Schultz "Jason" Chan of Akebia Therapeutics, Inc. received a five-
                   year bar.................................................................................................... 14

              5.      The Gupta case is not a fair comparison. ................................................ 15

II.     A CIVIL PENALTY IS NOT APPROPRIATE GIVEN THE SANCTIONS
      ALREADY IMPOSED UPON MR. SHKRELI. ..................................................... 17

      A.      No Additional Punishment or Deterrence is Required in Mr. Shkreli's
             Case...................................................................................................................... 18

      B.      The Cases Cited by the Commission are Inapposite............................................ 20

CONCLUSION.................................................................................................................. 22

## TABLE OF AUTHORITIES

### Cases

Amended Judgment, ECF Number 583, *United States v. Shkreli*,
No. 15-cr-637 (E.D.N.Y. Apr. 17, 2018) ................................................................. 4, 5, 18, 20

Complaint, ECF Number 1, *SEC v. Gupta*,
No. 11-cv-7566 (S.D.N.Y. Oct. 26, 2011) ............................................................... 15

Complaint, ECF Number 1, *SEC v. Holmes*,
18-cv-1602 (N.D. Cal. Mar. 14, 2018) ..................................................................... 9

Complaint, ECF Number 9, *SEC v. DiMaria*,
15-cv-07035 (S.D.N.Y. Sept. 9, 2015) ..................................................................... 11

Complaint, ECF Number 1, *SEC v. U.S. Technologies, Inc.*,
02-cv-02495 (D.D.C. Dec. 19, 2002) ........................................................................ 12

Final Judgment as to Anthony C. Ciccone, ECF Number 114-4, *SEC v. Arias et al.*,
No. 12-cv-2937 (E.D.N.Y. Oct. 30, 2020) ................................................................ 18

Final Judgment as to Defendant Jason Goldfarb, ECF Number 49, *SEC v. Cutillo*,
No. 09-cv-9208 (S.D.N.Y. Oct. 17, 2011) ................................................................ 18

Final Judgment as to Defendant Zvi Goffer, ECF Number 255, *SEC v. Galleon Management, LP*,
No. 09-cv-8811 (S.D.N.Y. Dec. 5, 2011) .................................................................. 18

Final Judgment as to Edward Durante, ECF Number 139, *SEC v. Durante*,
No. 15-cv-9874 (S.D.N.Y. Mar. 19, 2019) ................................................................ 18

Final Judgment, ECF Number 43, *SEC v. Earls*,
No. 02-cv-02495 (D.D.C. Jun 13, 2011) ................................................................... 7, 12

Final Judgment, ECF Number 87, *SEC v. DiMaria*,
No. 15-cv-07035 (S.D.N.Y. Sept. 9, 2015) ............................................................... 7, 11

Final Judgment, ECF Number 9, *SEC v. Holmes*,
No. 18-cv-1602 (N.D. Cal. Mar. 27, 2018) ............................................................... 7, 8

Judgment, ECF Number 83, *United States v. DiMaria*,
No. 17-cr-20898, (S.D. Fla. Sept. 26, 2018) ............................................................ 12

*SEC v. Bankosky*,
716 F.3d 45 (2d Cir. 2013) ........................................................................................ 5

*SEC v. Bankosky,*
    No. 12-cv-1012(HB), 2012 WL 1849000 (S.D.N.Y. May 21, 2012) .......................................... 6

*SEC v. C.J.'s Fin.,*
    No. 10-cv-13083 (SJM), 2012 WL 3600239 (E.D. Mich. July 30, 2012) ............................... 19

*SEC v. Chan,*
    465 F. Supp. 3d 18 (D. Mass. 2020) ........................................................................ 7, 21

*SEC v. Contorinis,*
    743 F.3d 296 (2d Cir. 2014) ...................................................................................... 19

*SEC v. Credit Bancorp, Ltd.,*
    738 F. Supp. 2d 376 (S.D.N.Y. 2010) ...................................................................... 6, 19

*SEC v. DiBella,*
    No. 04-cv-1342(EBB), 2008 WL 6965807 (D. Conn. Mar. 13, 2008) ( ................................ 17

*SEC v. E-Smart Techs., Inc.,*
    139 F. Supp. 3d 170 (D.D.C. 2015) ............................................................................ 6

*SEC v. First Pacific Bancorp,*
    142 F.3d 1186 (9th Cir. 1998) ................................................................................... 6

*SEC v. Gowrish,*
    No. 09-cv-05883(SI), 2011 WL 2790482 (N.D. Cal. July 14, 2011) ................................... 19

*SEC v. Gupta,*
    No. 11-cv-7566(JSR), 2013 WL 3784138 (S.D.N.Y. July 17, 2013) .............................. 15, 21

*SEC v. iShopNoMarkup.com, Inc.,*
    No. 04-cv-4057 (ARL), 2012 WL 716928 (E.D.N.Y. Mar. 3, 2012) ................................ 5, 6

*SEC v. Johnson,*
    595 F. Supp. 2d 40 (D.D.C. 2009) ........................................................................... 17

*SEC v. Kara,*
    No. 09-cv-1880, 2016 WL 794886 (N.D. Cal. Mar. 1, 2016) ............................................ 21

*SEC v. Loomis,*
    17 F. Supp. 3d 1026 (E.D. Cal. 2014) ........................................................................ 18

*SEC v. Patel,*
    61 F.3d 137 (2d Cir. 1995) .............................................................................. 1, 4, 5

*SEC v. Patel,*
    No. 93-cv-4603(RPP), 1994 WL 364089 (S.D.N.Y. 1994), *rev'd on other grounds,*
    61 F.3d 137 (2d Cir. 1995) ................................................................................................ 19, 21

*SEC v. Pegasus Wireless Corp.,*
    No. 09-cv-02302(JSW), 2012 WL 787397 (N.D. Cal. Mar. 9, 2012) ................................... 18

*SEC v. Rajaratnam,*
    822 F. Supp. 2d 432 (S.D.N.Y. 2011) ................................................................................. 20

*SEC v. Sargent,*
    329 F.3d 34 (1st Cir. 2003) ................................................................................................. 21

*SEC v. Shah,*
    No. 92-cv-1952(RPP), 1993 WL 288285 (S.D.N.Y. July 28, 1993) ................................... 6, 21

*SEC v. Snyder, 03-cv-4658,*
    2006 WL 6508273 (S.D. Tex. Aug. 22, 2006) ...................................................................... 7

*SEC v. Sourlis,*
    851 F.3d 139 (2d Cir. 2016) ................................................................................................ 17

*SEC v. Stanard,*
    No. 06-cv-7736(GEL), 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ...................................... 7

*SEC v. Syndicated Food Serv. Intl.,*
    No. 04-cv-1303, 2014 WL 2884578 (E.D.N.Y. Mar. 28, 2014), *report and
    recommendation adopted,* 2014 WL 1311442 (E.D.N.Y. Mar. 28, 2014) .............................. 20

Superseding Indictment, ECF Number 39, *United States v. Holmes,*
    18-cr-258 (N.D. Cal. Sept. 6, 2018) ..................................................................................... 10

Verdict Form, ECF Number 253, *United States v. Chan,*
    No. 16-cr-10268 (D. Mass. July 12, 2018) ........................................................................... 14

**Statutory Authorities**

15 U.S.C. § 77q(a) .................................................................................................... 3
15 U.S.C. § 78j(b) .................................................................................................... 3
15 U.S.C. § 78u-1(a)(2) .......................................................................................... 21
15 U.S.C. §§ 80b-6(1), 18b-6(2), 80b-6(4) .......................................................... 3-4
18 U.S.C. § 3553(a) ............................................................................................... 20

**Rules and Regulations**

17 C.F.R. § 240.3b-2 .............................................................................................. 16
17 C.F.R. §§ 240.10b-5 ........................................................................................... 3
17 C.F.R. § 275.206(4)-8 ......................................................................................... 4

**Additional Authorities**

Brian Dowling, *Jailed Biotech Inside Trader Gets 5-Year Ban In SEC Case*, Law360
 (June 8, 2020, 8:03 PM), https://www.law360.com/articles/1280879/jailed-biotech-
 inside-trader-gets-5-year-ban-in-sec-case................................................................. 14

Martin Howell, *Ex-McKinsey chief Gupta says he was in solitary for weeks in U.S. jail*,
 Reuters (Mar. 26, 2019, 5:50 AM), https://www.reuters.com/article/us-crime-gupta-
 prison/ex-mckinsey-chief-gupta-says-he-was-in-solitary-for-weeks-in-u-s-jail-
 idUSKCN1R70XR.................................................................................................. 16

Letter from Centers for Medicare & Medicaid Services to Theranos, Inc. (Jan. 25, 2016),
 available at https://cdn2.vox-
 cdn.com/uploads/chorus_asset/file/5969923/Theranos_Inc_Cover_Letter_01-25-
 2016.0.pdf (last accessed March 18, 2021).............................................................. 9

Litigation Release No. 21998, Sec. & Exch. Comm'n, *Final Judgment Entered Against
 Former Chairman and CEO of U.S. Technologies, Inc.*, available at
 https://www.sec.gov/litigation/litreleases/2011/lr21998.htm. (June 14, 2011) ........ 13

Steve Peikin, Co-Director, Division of Enforcement, PLI White Collar Crime 2018:
 Prosecutors and Regulators Speak (Oct. 3, 2018) (transcript available at
 https://www.sec.gov/news/speech/speech-peikin-100318#_ftnref12). .................... 16

Defendant Martin Shkreli respectfully submits this memorandum in opposition to Plaintiff Securities and Exchange Commission's ("Commission") Motion for an Officer and Director Bar and Civil Monetary Penalties.

## PRELIMINARY STATEMENT

Mr. Shkreli has accepted responsibility for his conduct in this action.  He has consented to entry of a Judgment permanently enjoining him from future violations of the federal securities laws, waived his right to appeal that judgment, and submitted himself to this Court's determination as to what additional remedies are appropriate in this case.

Mr. Shkreli recognizes that the facts and circumstances detailed in the Complaint, which he has agreed not to contest for purposes of this motion, support a finding by this Court that limitations on his activities as an officer or director of a publicly traded company are appropriate. However, the permanent bar demanded by the Commission is excessive.  A permanent bar is excessive because Mr. Shkreli is a first-time offender and, given all the other punitive and deterrent sanctions that have been imposed against him, the likelihood of recurrence is low.  It is excessive also because Mr. Shkreli is only 38 years old and a lifetime bar would have a far greater punitive impact on him than on a similarly situated, but older, defendant.  For these reasons, Mr. Shkreli respectfully requests that the Court enter a judgment barring him from serving as an officer or director of a public company for a period of ten years.[1]

A ten-year bar is appropriate and sufficient to ensure against a recurrence of the same or similar conduct.  A ten-year bar is sufficient under the factors set forth in *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995), in which the Second Circuit held that a district court should consider a time-limited or conditional bar before imposing a permanent bar, particularly where, as here, the

---

[1] Mr. Shkreli will submit a proposed Final Judgment after the Court determines the length of the bar and conditions, if any, that should be imposed.

defendant is a first-time offender. This fact is illustrated by cases, discussed below, in which courts, applying the factors set forth in *Patel*, have imposed time-limited bars for more culpable conduct. A time-limited bar is sufficient also in light of the sanctions to which Mr. Shkreli is already subject as a result of his parallel criminal conviction.

Even if the Court were to find a ten-year bar is insufficient, a permanent bar would still be excessive. Instead, under § 20(e) of the Securities Act and § 21(d)(2) of the Exchange Act, the Court could impose conditions on Mr. Shkreli's possible future service as an officer or director of a public company, for a period of time following the initial ten-year bar, that would more than effectuate the purpose of the governing statutes, that is, to protect the capital markets and investors from a possible recurrence of the same or similar conduct.

For example, for a period of time, say two years, following his ten-year bar, the Court could place one or more of the following conditions on Mr. Shkreli's service as an officer or director of a public company: (a) prohibit Mr. Shkreli from participating in (i) the company's financial reporting or company audits, (ii) procedures related to the company's compliance with the federal securities laws, or (iii) the preparation or review of company filings with the Commission; (b) require written notification to Commission staff of his intention to serve as an officer or director of a public company on at least thirty days' notice; (c) require Mr. Shkreli to retain or cause to be retained an independent monitor not unacceptable to Commission staff to monitor his compliance with both the terms of the final judgment entered against him and the federal securities laws; and/or (d) require Mr. Shkreli to cause the independent monitor to provide written reports to Commission staff, for example, on a semi-annual basis concerning the same. Such measures would provide

ample protection to the capital markets and investors against a recurrence of the misconduct without being excessively punitive.[2]

In addition, the civil money penalties demanded by the Commission are completely unnecessary as either additional punishment or an additional deterrence measure. First, if one is to believe a seven-year prison term has any effect on a person, on the basis of that fact alone, the only natural conclusion is that no additional punishment or deterrence is required in this case. And, here, the punitive and deterrent effect of Mr. Shkreli's sentence is reinforced substantially by the more than $7.8 million in monetary sanctions that he has already been ordered by the Court to pay, and the permanent injunction against future violations of the federal securities laws to which he consented in this case. Second, as a practical matter, the pecuniary gains the Commission cites as support for penalties are the very same gains that the Court has already addressed through forfeiture. In short, the Commission is asking the Court to impose sanctions based upon the same proceeds that underlie the criminal Order of Forfeiture. For these reasons, the Court should exercise its discretion not to impose additional civil penalties in this case.

## STATEMENT OF FACTS

On December 28, 2020, this Court entered a Judgment, on consent, as to Mr. Shkreli. *See* Order dated Dec. 28, 2020, ECF No. 45 ("Judgment"). In connection with that Judgment, Mr. Shkreli agreed to the imposition of an injunction against future violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)) and Rules 10b-5 and 10b-21 thereunder (17 C.F.R. §§ 240.10b-5 and 240.10b-21); § 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)); and §§ 206(1), 206(2), and 206(4) of the Advisers Act of 1940 (15 U.S.C. §§ 80b-6(1), 18b-6(2), and 80b-6(4)) and Rule 206(4)-8 thereunder (17 C.F.R. §

---

[2] Mr. Shkreli proposes a two-year period, but also recognizes that the Court may determine and order a longer period during which such conditions would be imposed.

275.206(4)-8). Judgment §§ I–V. Mr. Shkreli also agreed to waive his right to appeal the Judgment.

Mr. Shkreli agreed to accept the Court's determination, on the Commission's motion, pursuant to § 20(e) of the Securities Act and § 21(d)(2) of the Exchange Act, as to whether he should be prohibited, conditionally or unconditionally, and permanently or for such period of time as the Court shall determine, from acting as an officer or director of any issuer that has a class of securities registered pursuant to § 12 of the Exchange Act or that is required to file reports pursuant to § 15(d) of such Act. *Id.* § VI. Mr. Shkreli agreed also that the appropriate amount, if any, of disgorgement or civil penalties would be determined by the Court, also on the Commission's motion. The Commission has not moved for disgorgement.

On March 9, 2018, following his conviction on charges arising from much of the same conduct as the conduct set forth in the Complaint, Mr. Shkreli was sentenced to 84 months in prison, to be followed by three years of supervised release. The Court also ordered Mr. Shkreli to forfeit $7,360,450, and to pay a $75,000 fine and $388,336 in restitution. *See* Amended Judgment, ECF No. 583, *United States v. Shkreli*, No. 15-cr-637 (E.D.N.Y. Apr. 17, 2018).

## ARGUMENT

### I.     A TEN-YEAR BAR IS SUFFICIENT IN THIS CASE.

#### A.     *The Patel Factors Counsel Against the Imposition of a Lifetime Bar.*

In *SEC v. Patel*, the Second Circuit emphasized that, under § 20(e) of the Securities Act and § 21(d)(2) of the Exchange Act, courts should consider whether a time-limited or conditional bar is sufficient before imposing a permanent officer and director bar. *SEC v. Patel*, 61 F.3d 137, 142 (2d Cir. 1995). That is especially true where there is no prior history of unfitness. *Id.* Furthermore, in deciding whether a time-limited bar is sufficient, the Second Circuit noted, it is

appropriate to take into account any prior punishment that may have been imposed on the defendant in a parallel criminal proceeding.  *See id.*

The *Patel* Court identified six non-exclusive factors that courts may consider when deciding whether to impose an officer or director bar, or the length of such a bar:  (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the violation; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will recur.  *Id.* at 141.  Courts have substantial discretion in determining whether to impose a bar and need not apply all the factors in every case.  *See id.*  Courts in the Second Circuit have continued to apply the *Patel* factors following the enactment of the Sarbanes-Oxley Act of 2002.  *See SEC v. Bankosky*, 716 F.3d 45, 48–49 (2d Cir. 2013).

1.  *Mr. Shkreli is a first-time offender.*

First and foremost, Mr. Shkreli has no prior history of unfitness.  In recognizing the "loss of livelihood and stigma attached to permanent exclusions from the corporate suite" that results from an officer and director bar, the Second Circuit has held that "[a]though it is not essential for a lifetime ban that there be past violations, we think it is essential, in the absence of such violations, that a district court articulate the factual basis for finding the likelihood of recurrence."  *Patel*, 61 F.3d at 142.  Indeed, this factor is of particular importance in balancing the *Patel* factors.  *SEC v. iShopNoMarkup.com, Inc.*, No. 04-cv-4057 (DRH) (ARL), 2012 WL 716928, at *3–6 (E.D.N.Y. Mar. 3, 2012) (declining to impose bar against president of company in connection with offering fraud involving more than 350 investors).

Mr. Shkreli has no prior criminal history and, prior to the events giving rise to this action, has never been found by the Commission or a Court to have violated the federal securities laws.  The "term 'repeat offender' refers to someone who has committed separate violations of the

securities laws in the past." *See iShopNoMarkup.com*, 2012 WL 716928, at \*5; *see also SEC v. Shah*, No. 92-cv-1952 (RPP), 1993 WL 288285, at \*7 (S.D.N.Y. July 28, 1993) (finding that defendant "cannot be considered a 'repeat' securities-law violator" when he "was never involved in any other violations of the securities laws"); *SEC v. E-Smart Techs., Inc.*, 139 F. Supp. 3d 170, 181–82 (D.D.C. 2015) ("[R]epeat offenders are those who committed securities violations outside of the ones giving rise to the present litigation." (citing *SEC v. Bankosky*, No. 12-cv-1012 (HB), 2012 WL 1849000, at \*2 (S.D.N.Y. May 21, 2012))).  The Commission relies on *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998), for the proposition that a defendant may be considered a repeat offender when he or she engages in "ongoing and recurrent violations," but that view was explicitly rejected by the Court in *iShopNoMarkup.com*.  *See* 2012 U.S. WL 716928, at \*5.

Because Mr. Shkreli has not been found to have violated any securities laws prior to the events giving rise to the present action, he is not a "repeat offender" and thus this "factor weighs heavily against the imposition of an officer and director bar."  *See Id.*

### 2.      *The likelihood the misconduct will recur is low.*

Mr. Shkreli is already subject to severe sanctions that serve as guarantees against the recurrence of the same or similar conduct as alleged in this action.  Currently, Mr. Shkreli is serving a seven-year prison term to be followed by three years of supervised release.  This experience undoubtedly will serve as an extraordinary deterrent against future violations of the federal securities laws. *See, e.g.*, *SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 391 (S.D.N.Y. 2010).

The deterrent effect of Mr. Shkreli's experience in prison is reinforced substantially by the more than $7.8 million in monetary sanctions Mr. Shkreli has been ordered to pay.  *See* cases cited *infra* Section II.A.  Furthermore, under the terms of the Judgment, Mr. Shkreli is subject to a conduct-based injunction against future violations of the antifraud provisions of the federal

securities laws. This injunction provides an additional "significant deterrent, greatly reducing the likelihood that [Mr. Shkreli] . . . will engage in future securities violations as an officer or director," or otherwise. *See SEC v. Stanard*, No. 06-cv-7736 (GEL), 2009 WL 196023, at *33 (S.D.N.Y. Jan. 27, 2009).

For all of these reasons, the likelihood that Mr. Shkreli's misconduct will recur must be considered very low.

        3.    *The remaining Patel factors.*

Courts have imposed time-limited officer and director bars in cases where a defendant's economic stake far exceeded the economic stake Mr. Shkreli had in the conduct at issue here. *See, e.g.*, Final Judgment, ECF No. 9, *SEC v. Holmes*, No. 18-cv-1602 (N.D. Cal. Mar. 27, 2018); Final Judgment, ECF No. 87, *SEC v. DiMaria*, No. 15-cv-07035 (S.D.N.Y. Sept. 9, 2015); Final Judgment, ECF No. 43, *SEC v. Earls*, No. 02-cv-02495 (D.D.C. June 13, 2011).[3] In other cases, Mr. Shkreli recognizes, courts have imposed permanent bars where a defendant's economic stake was not as great.

On the whole, courts have not drawn bright lines in terms of what kinds of conduct violative of § 17(a) of the Securities Act or § 10(b) of the Exchange Act may be deemed egregious or not egregious, but Mr. Shkreli appreciates this factor will not cut in his favor. *Compare, e.g.*, *SEC v. Chan*, 465 F. Supp. 3d 18, 35 (D. Mass. 2020) (insider trading by company director was egregious), *with SEC v. Snyder*, 03-cv-4658, 2006 WL 6508273, at *2–4 (S.D. Tex. Aug. 22, 2006) (insider trading by company officer not egregious).

Finally, Mr. Shkreli acknowledges that his positions at MSMB Capital Management LLC, MSMB Healthcare Management LLC, and Retrophin, Inc. do not cut in his favor and that his

---

[3] These cases will be discussed in more detail below.

criminal conviction establishes that he acted with a high degree of scienter with respect to certain allegations in the Complaint.[4]

**B.**   ***Courts Have Imposed Time-Limited Bars Against More Culpable or Comparable Defendants***

In each of the actions discussed below, courts have imposed a time-limited bar against a defendant who was found (a) to have engaged in egregious conduct; (b) while serving as chief executive officer ("CEO"), chief financial officer ("CFO"), and/or director of a company; (c) with his or her high degree of scienter established by a parallel criminal conviction (with one exception where the defendant is now under indictment); and (d) to have had a substantial economic stake in the conduct.   In each case, the defendant was a first-time offender and, notwithstanding egregiousness, scienter, and a substantial economic stake in the conduct, the court imposed a time-limited bar.

1.   *Elizabeth Holmes of Theranos received a ten-year bar.*

In March 2018, the United States District Court for the Northern District of California imposed a ten-year officer and director bar on Elizabeth Anne Holmes.  Final Judgment, ECF No. 9, *SEC v. Holmes*, No. 18-cv-1602 (N.D. Cal. Mar. 27, 2018) ("Holmes Judgment").  Holmes engaged in a fraud, in economic terms, approximately a hundred times the size of the fraud for which Mr. Shkreli has now accepted responsibility.  Furthermore, her fraud, according to the

---

[4] That is, the allegations concerning misrepresentations or omissions made to MSMB Capital Management LP ("MSMB Capital") and MSMB Healthcare LP ("MSMB Healthcare") investors, and the misappropriation of funds from MSMB Healthcare to settle claims brought in an arbitration against MSMB Capital and Mr. Shkreli, in connection with short sales Mr. Shkreli made on behalf of MSMB Capital.  However, this is not true with respect to the Commission's allegations that Mr. Shkreli fraudulently induced Retrophin to issue stock or make cash payments to certain investors in return for the release of claims they may have had against Mr. Shkreli, MSMB Capital Management LLC, and/or MSMB Healthcare Management LLC.  Mr. Shkreli was acquitted of that conduct though, admittedly, for sentencing purposes the Court concluded the government had proven it by a preponderance of the evidence.  *See* Memorandum and Order at 89, ECF No. 535, *Shkreli*, No. 15-cr-637.

Centers for Medicare & Medicaid Services ("CMS"), posed "immediate jeopardy to patient health and safety," meaning that the fraud had "already caused, [was] causing, or [was] likely to cause, at any time, serious injury or harm, or death." *See* Letter from Centers for Medicare & Medicaid Services to Theranos, Inc. (Jan. 25, 2016).[5]

According to the Commission's complaint against her, from late 2013 through 2015, Holmes, then-chairman of the board and CEO of Theranos, Inc. ("Theranos"), together with the company's chief operating officer, raised more than $700 million from investors based on false statements and exaggerations about the company's technology, commercial relationships, regulatory status, and financial performance. *See generally* Complaint, ECF No. 1, *SEC v. Holmes*, 18-cv-1602 (N.D. Cal. Mar. 14, 2018) ("Holmes Compl."). Holmes repeatedly lied to board members, investors, reporters, doctors, and business counterparties, falsely claiming, among other things, that Theranos would generate $100 million in revenues in 2014 and $1 billion in revenues in 2015 (the truth was closer to a few hundred thousand dollars); that Theranos' products were deployed by the U.S. Department of Defense on the battlefield in Afghanistan and on medevac helicopters; and that Theranos had performed clinical trials with well-known pharmaceutical companies (and used two reports purportedly written by the pharmaceutical companies that were complete fabrications). *See id.* Holmes went so far as to stage fake demonstrations of the company's technology. *Id.* ¶¶ 25–36. During the relevant period, in addition to her salary, Holmes exercised 53.7 million stock options and received super-majority voting shares, which granted her almost complete control over the company. *Id.* ¶ 12.

---

[5] Available at https://cdn2.vox-cdn.com/uploads/chorus_asset/file/5969923/Theranos_Inc_Cover_Letter_01-25-2016.0.pdf (last accessed March 18, 2021).

The final judgment entered against Holmes, to which the Commission consented, barred her from serving as an officer or director of a public company for a period of ten years. *See* Holmes Judgment § III. Holmes now has been charged criminally in an eleven-count indictment for, among other things, conspiracy to commit wire fraud against Theranos investors and wire fraud. *See* Superseding Indictment, ECF No. 39, *United States v. Holmes*, 18-cr-258 (N.D. Cal. Sept. 6, 2018). Holmes faces up to twenty years in prison on each of the eleven counts of the indictment.

As noted, Holmes' fraud, in terms of her economic stake in the conduct, was orders of magnitude larger than Mr. Shkreli's. Holmes' conduct arguably was far more brazen and egregious and resulted in, according to findings by CMS, putting the lives, health, and safety of individuals at risk. Her degree of scienter was as high if not higher than Mr. Shkreli's by any measure. In terms of her role and the breach of shareholder trust that her conduct entailed, as both CEO and chairman of the board of Theranos, Holmes caused the company to create a super-majority class of stock so she could maintain control of the company while issuing additional shares of the company's common stock as part and parcel of her offering fraud. *See* Holmes Compl. ¶¶ 43–47.

Holmes was a first-time offender, like Mr. Shkreli. Holmes, age 34 at the time judgment was entered, like Mr. Shkreli, was relatively young. Holmes relinquished control of Theranos in connection with the judgment (relatedly, Mr. Shkreli no longer controls Retrophin) but, of course, that does not prevent her from becoming an officer or director of Theranos—or any other company—when her ten-year officer and director bar expires. At that point, absent any criminal sanctions by then imposed, only the conduct-based injunction against her will serve to reduce the likelihood that her misconduct will recur. In short, if a ten-year bar was sufficient in Ms. Holmes' case, it is more than sufficient in this case.

2.      *Edward DiMaria of Bankrate, Inc. received a five-year bar.*

In August 2017, the United States District Court for the Southern District of New York imposed a five-year officer and director bar against Edward DiMaria, CFO of Bankrate, Inc. ("Bankrate"), for both accounting fraud and insider trading.  *See* Final Judgment, ECF No. 87, *SEC v. DiMaria*, No. 15-cv-7035 (S.D.N.Y. Aug. 16, 2017) ("DiMaria Judgment").

According to the Commission's complaint against him, DiMaria intentionally manipulated Bankrate's financial results in order to meet or exceed analyst earnings estimates.  *See generally* Complaint, ECF No. 9, *SEC v. DiMaria*, 15-cv-07035 (S.D.N.Y. Sept. 9, 2015).  DiMaria's fraud involved, among other things, directing subordinates to book fictional revenue, reduce expenses without any basis for doing so, and conceal audit fees to fraudulently increase Bankrate's reported quarterly earnings; lying to the company's auditors about the fraudulent accounting entries; and causing Bankrate to make false statements in filings with the Commission.  *See generally id.* DiMaria then engaged in insider trading, selling approximately $2 million worth of Bankrate stock—the value of which had been inflated by hundreds of thousands of dollars as a result of his own fraud—in the two-week period after the company announced its falsely inflated financial results.  *Id.* ¶¶ 81–83.  These frauds, according to the Commission, were part of a continuing pattern of conduct, dating back at least a year, which included DiMaria causing Bankrate to maintain certain "cushion accounts," unknown to the company's auditors, which DiMaria used to "tune" Bankrate's financial numbers. *See id.* ¶¶ 1–3.

The final judgment against DiMaria, to which the Commission consented, barred him from serving as an officer or director of a public company for a period of five years.  DiMaria Judgment § VIII.  In a parallel criminal action, DiMaria pleaded guilty to one count of conspiracy to commit accounting fraud and securities fraud, and one count of making false statements in Commission filings.  *See* Judgment, ECF No. 83, No. 17-cr-20898, *United States v. DiMaria* (S.D. Fla. Sept.

11

26, 2018).  DiMaria was sentenced to 120 months in prison to be followed by three years of supervised release, and ordered to pay restitution in excess of $21 million.  *Id.*

In sum, DiMaria's conduct was egregious in a number of ways, not an isolated incident, and included making false statements in Commission filings.  DiMaria was the company's CFO, central to the fraud, and directed others in fraudulent conduct.  His high degree of scienter was established by his criminal conviction on charges stemming from the same conduct as formed the basis of the Commission's complaint against him.  His economic stake in the conduct (based on the restitution he was ordered to pay) far exceeded Mr. Shkreli's.  Yet, like Mr. Shkreli, DiMaria was a first-time offender, where the likelihood of recurrence was reduced dramatically by a lengthy prison term, supervised release, substantial criminal monetary sanctions, and a conduct-based injunction against future violations of the federal securities laws.

3.      *Gregory Earls of U.S. Technologies, Inc. received a twenty-year bar.*

In June 2011, the United States District Court for the District of Columbia imposed a twenty-year officer and director bar against C. Gregory Earls, the chairman and CEO of U.S. Technologies, Inc. ("UST").  *See* Final Judgment, ECF No. 43, *SEC v. Earls*, No. 02-cv-02495 (D.D.C. Jun 13, 2011) ("Earls Judgment").

According to the Commission's complaint against him, over a four-year period, Earls induced more than a hundred investors to give him a total of more than $20 million to purchase UST stock and warrants through a company he created to carry out his scheme.  *See generally* Complaint, ECF No. 1, *SEC v. U.S. Technologies, Inc.*, 02-cv-02495 (D.D.C. Dec. 19, 2002) ("Earls Compl.").  Although UST badly needed the capital infusion, Earls used only a small portion of the funds raised to purchase UST stock.  Instead, he transferred $13.8 million of the investors'

funds to his personal accounts, then disbursed these funds to himself, his ex-wife, and an investor who had sued him. *See* Earls Compl. ¶¶ 2, 9, 11–12, 16.

Earls lied repeatedly to investors and UST's board of directors about the ownership and value of UST assets to divert attention from his fraud. *See id.* ¶¶ 18–26. And, as he was stealing from both his investors and UST, Earls agreed to raise capital for a privately held online grocery delivery business founded by one of his investors. *See id.* ¶¶ 17–21. In doing so, Earls diverted a $1.5 million investment intended for the grocery business to his personal use, then covered the amount by misappropriating $1.3 million from another UST investor and diverting money from other sources. *See id.* Moreover, according to the Commission's complaint, Earls had been accused of misappropriating investors' funds in connection with at least four other companies with which he had been involved in years past, resulting in Earls being sued by investors alleging racketeering and Ponzi schemes. *See id.* ¶¶ 23–24.

The final judgment against Earls, to which the Commission consented, barred him from serving as an officer or director of a public company for twenty years. Earls Judgment § VI. In a parallel criminal proceeding, Earls had been convicted on 22 counts of securities fraud, mail fraud, and wire fraud, sentenced to 125 months in prison to be followed by three years of supervised release, and ordered to pay nearly $22 million in restitution.[6]

Earls' conduct arguably was more egregious than the conduct for which Mr. Shkreli has accepted liability in this matter. Earls stole $13.8 million from a company for which he served as CEO and chairman of the board while the company was starved for cash. He stole directly from his investors, converting their funds for his personal use. His high degree of scienter was

---

[6] *See* Litigation Release No. 21998, Sec. & Exch. Comm'n, Final Judgment Entered Against Former Chairman and CEO of U.S. Technologies, Inc. (June 14, 2011), *available at* https://www.sec.gov/litigation/litreleases/2011/lr21998.htm.

established by his criminal conviction on charges arising from the same conduct as formed the basis of the Commission's complaint against him.  It is less clear whether the Court considered Earls a repeat offender for purposes of the *Patel* factors (Mr. Shkreli is not), though the length of the bar indicates it likely did.

> 4.   *Schultz "Jason" Chan of Akebia Therapeutics, Inc. received a five-year bar.*

In June 2020, the United States District Court for the District of Massachusetts imposed a five-year officer and director bar against Schultz "Jason" Chan, a director of Biostatistics at Akebia Therapeutics, Inc. ("Akebia"), for his role in an insider-trading scheme. *Chan*, 465 F. Supp. 3d at 34–38.  In breach of his fiduciary duty to Akebia, Chan purchased shares of Akebia stock, and instructed his wife and his co-defendant to do the same, immediately prior to the announcement of positive clinical trial results that resulted in a 45 percent increase in the price of the stock. *Id.* at 28.

A parallel criminal action was instituted, during which Chan was dubbed "Dr. Jekyll and Mr. Hyde," and repeatedly jailed for various misconduct throughout his criminal proceeding, including attempting to bill prosecutors for his time, emailing prosecutors directly to accuse them of lying, and speaking to a witness mid-trial.[7]  Chan was later convicted of one count of conspiracy to commit securities fraud and three counts of insider trading; as a result, the Court sentenced him to 36 months' imprisonment, a $65,000 fine, and $153,428.72 restitution. *See* Verdict Form, ECF No. 253, *United States v. Chan*, No. 16-cr-10268 (D. Mass. July 12, 2018).

---

[7] *See* Brian Dowling, *Jailed Biotech Inside Trader Gets 5-Year Ban In SEC Case*, Law360 (June 8, 2020, 8:03 PM), https://www.law360.com/articles/1280879/jailed-biotech-inside-trader-gets-5-year-ban-in-sec-case.

In assessing the *Patel* factors to determine that an officer and director bar was appropriate, the Court found that Chan's conduct was egregious given the nature of the scheme and the fact that it occurred over a period of approximately 22 months. *Chan*, 465 F. Supp. 3d at 35. The Court noted that his profession "may place him in a position to commit future misconduct." *Id.* at 37–38. And the Court found that the elements of scienter, his role as a director of Biostatistics, and the likelihood that misconduct would recur all weighed in favor or imposing a bar. *Id.* at 34–38. However, Chan was a first-time offender and his economic stake in the fraud was "relatively modest." *Id.* at 37. The Court found that although Chan's conduct was "serious," it did "not warrant permanent exclusion from the corporate suite" and thus a five-year bar was "sufficient to deter any future misconduct [and strike an] appropriate balance between protecting investors and avoiding an unduly harsh permanent ban." *Id.* at 38 (internal quotation marks omitted)).

5.     *The Gupta case is not a fair comparison.*

*SEC v. Gupta*, to which the Commission urges the Court to draw a comparison, is simply not a fair comparison. Gupta, former head of McKinsey & Company, used his positions as a member of the board of directors of both The Goldman Sachs Group, Inc. and The Procter & Gamble Company to purposefully and frequently disseminate material, nonpublic information to his co-conspirators. *See* Complaint, ECF No. 1, *SEC v. Gupta*, No. 11-cv-7566 (S.D.N.Y. Oct. 26, 2011). The Court in *Gupta* concluded that, because of his position at the "pinnacle" of his profession and his "nearly unparalleled level of access to upper echelons of corporate executives throughout the world," Gupta would be well-equipped to repeat his fraud in the future, *SEC v. Gupta*, No. 11-cv-7566 (JSR), 2013 WL 3784138, at *3 (S.D.N.Y. July 17, 2013)—a not-so-

distant future, given that Gupta would only spend 19 months in prison.[8]  Furthermore, Gupta was

64 years old at the time the Court imposed a permanent bar against him.  *See* Complaint ¶ 8, ECF

No. 1, *SEC v. Gupta*, 11-CIV-7566 (S.D.N.Y. Oct. 28, 2011).  A permanent bar for Mr. Shkreli,

now 38, is a much different, more punitive sanction.

*

While an officer and director bar undoubtedly has a punitive impact on a person, it is not

meant to be a punishment but, rather, a prophylactic measure intended to preserve the integrity of

our markets and protect investors.[9]  In Mr. Shkreli's case, a ten-year officer and director bar is

appropriate and more than sufficient.  If the United States District Court for the Northern District

of California and the Commission, which consented to entry of the judgment against her, deemed

a ten-year bar from serving as an officer or director of a public company sufficient to protect

investors and the capital markets from Holmes, it is difficult to imagine how the same would not

suffice in Mr. Shkreli's case.  The audacity and egregiousness of Holmes' conduct, and the sheer

size of her fraud, exist in a class of their own.  Likewise, DiMaria engaged in multiple frauds at

once, had a greater economic stake in his conduct than Mr. Shkreli, and received a five-year bar.

As detailed above, Mr. Shkreli's conduct compares favorably also to Earls' and Chan's, and the

respective officer and director bars imposed against them.

Moreover, the definition of "officer" under the Exchange Act is very broad.  *See* 17 C.F.R.

§ 240.3b-2 ("The term officer means a president, vice president, secretary, treasury or principal

---

[8] Martin Howell, *Ex-McKinsey chief Gupta says he was in solitary for weeks in U.S. jail*, Reuters (Mar. 26, 2019, 5:50 AM), https://www.reuters.com/article/us-crime-gupta-prison/ex-mckinsey-chief-gupta-says-he-was-in-solitary-for-weeks-in-u-s-jail-idUSKCN1R70XR.

[9] See Steve Peikin, Co-Director, Division of Enforcement, PLI White Collar Crime 2018: Prosecutors and Regulators Speak (Oct. 3, 2018) (transcript available at https://www.sec.gov/news/speech/speech-peikin-100318#_ftnref12).

16

financial officer, comptroller or principal accounting officer, and any person routinely performing corresponding functions...")  Thus, the question presented is not whether Mr. Shkreli should be barred permanently from serving as CEO or CFO but, rather, whether he would be employable by a public company in any corporate capacity.  Mr. Shkreli is and would be subject to sanctions that serve as exceptionally strong deterrents against his engaging in the same or similar conduct in the future: an 84-month prison term, three years of supervised release, more than $7.8 million in forfeiture and criminal monetary penalties, a felony conviction on his record, a permanent injunction against future violations of the federal securities laws, and a Commission enforcement action on his record.  For Mr. Shkreli, age 38 and a first-time offender, that would more than suffice.

## II.   A CIVIL PENALTY IS NOT APPROPRIATE GIVEN THE SANCTIONS ALREADY IMPOSED UPON MR. SHKRELI.

District Courts have broad discretion as to whether a penalty is appropriate, based on the facts and circumstances of the case, and, if one is indeed appropriate, the amount of that penalty. *See SEC v. DiBella*, No. 04-cv-1342 (EBB), 2008 WL 6965807, at *6 (D. Conn. Mar. 13, 2008) ("[T]he civil penalty framework is of a 'discretionary nature'" (quoting *SEC v. Moran*, 944 F. Supp. 286, 296–97 (S.D.N.Y. 1996))).  In the Second Circuit, civil monetary penalties serve two purposes: punishment and deterrence.  *SEC v. Sourlis*, 851 F.3d 139, 146 (2d Cir. 2016); *see also SEC v. Johnson*, 595 F. Supp. 2d 40, 46 (D.D.C. 2009) ("It is hornbook law that the purpose of a civil monetary penalty is to punish the defendant and deter him and others from securities violations.").  Neither additional punishment nor additional deterrence is required in Mr. Shkreli's case.

**A.     No Additional Punishment or Deterrence is Required in Mr. Shkreli's Case**

As a general matter, Courts in this Circuit have repeatedly declined to assess civil penalties,

in Commission civil enforcement actions, in light of a defendant's conviction and sentence in a

parallel criminal action. *See, e.g.*, Final Judgment as to Anthony C. Ciccone, ECF No. 114-4, *SEC*

*v. Arias et al.*, No. 12-cv-2937 (E.D.N.Y. Oct. 30, 2020); Final Judgment as to Edward Durante,

ECF No. 139, *SEC v. Durante*, No. 15-cv-9874 (S.D.N.Y. Mar. 19, 2019); Final Judgment as to

Defendant Zvi Goffer, ECF No. 255, *SEC v. Galleon Management, LP*, No. 09-cv-8811 (S.D.N.Y.

Dec. 5, 2011); Final Judgment as to Defendant Jason Goldfarb, ECF No. 49, *SEC v. Cutillo*, No.

09-cv-9208 (S.D.N.Y. Oct. 17, 2011).  The same is true in other jurisdictions.  *See, e.g.*, *SEC v.*

*Loomis*, 17 F. Supp. 3d 1026, 1033 (E.D. Cal. 2014) ("Given the magnitude of other civil and

criminal penalties Loomis faces, the court declines to impose a civil penalty."); *SEC v. Pegasus*

*Wireless Corp.*, No. 09-cv-02302 (JSW), 2012 WL 787397, at *3 (N.D. Cal. Mar. 9, 2012)

("Because each of the defendants will be incarcerated as a result of their conduct, the Court

declines to impose civil penalties in this case.").  This approach, taken by so many courts, is

consistent with Congress' intent that civil penalties serve as a disincentive to violate the securities

laws in the absence of a criminal prosecution for the same conduct.  *See* H.R. Rep. 101–616, at 17

(1990), *reprinted in* 1990 U.S.C.C.A.N. 1379, 1384 ("Many violators of the securities laws . . .

reap enormous profits from their violations.  *Absent a criminal prosecution* or a private suit for

damages, however, even the defendant who makes a deliberate decision to violate the law and

causes significant harm to the markets does not risk any monetary sanction more severe than an

order of disgorgement." (emphasis added)).  Here, that disincentive is not required in light of the

sanctions imposed upon Mr. Shkreli as a result of his conviction.

In some such instances, Courts have declined to assess civil penalties against defendants,

finding they have been sufficiently *deterred* by sanctions imposed in parallel criminal actions.  *See,*

*e.g.*, *SEC v. Patel*, No. 93-cv-4603 (RPP), 1994 WL 364089, at *4 & n.4 (S.D.N.Y. 1994) (finding that the "penalties which Patel has already suffered … sufficiently further the goal of deterrence"), *rev'd on other grounds*, 61 F.3d 137 (2d Cir. 1995); *Credit Bancorp*, 738 F. Supp. 2d at 291 (S.D.N.Y. 2010) (finding that "disgorgement, criminal restitution, incarceration, and injunction against future violations" were sufficient deterrents and that a further penalty was inappropriate); *cf. SEC v. Gowrish*, No. 09-cv-05883 (SI), 2011 WL 2790482, at *10 (N.D. Cal. July 14, 2011) ("[Defendant] faces no criminal penalties and is ordered to disgorge only $12,000 in profits—the appropriate amount in this case, but an insignificant sum when considering the goal of deterrence. [The 'other penalties' factor] weighs heavily in favor of a high civil penalty."). In other instances, courts have declined to impose penalties against a defendant, finding they have been sufficiently *punished*, either through incarceration or other punitive measures imposed in parallel criminal actions. *See, e.g.*, *SEC v. C.J.'s Fin.*, No. 10-cv-13083 (RSW) (SJM), 2012 WL 3600239, at *10 (E.D. Mich. July 30, 2012) (concluding that the imposition of a civil penalty would have been "draconian" in light of the prison sentence and other sanctions in defendant's parallel criminal case), *report and recommendation adopted*, 2012 WL 3597644 (E.D. Mich. Aug. 21, 2012).

The seven-year sentence Mr. Shkreli is serving is more than sufficient punishment and deterrence against future violations of the federal securities laws. The punitive and deterrent effects of Mr. Shkreli's experience in prison has been reinforced in economic terms by the more than $7.8 million in monetary sanctions imposed against him. Of that amount, the more than $7.3 million in forfeiture Mr. Shkreli has been ordered to pay should be dispositive of the question of whether additional civil penalties are required. That is because criminal forfeiture and civil penalties serve the same purpose: punishment. *SEC v. Contorinis*, 743 F.3d 296, 306 (2d Cir. 2014) (finding that criminal forfeiture "serves no remedial purpose" and "is designed to punish the

offender" (internal quotation marks omitted)).  Given that Mr. Shkreli's forfeiture obligations far exceed the penalties requested by the Commission, it is reasonable to conclude that, in terms of economic sanctions, even by the Commission's own measure, Mr. Shkreli has been punished sufficiently.  And, of course, Mr. Shkreli is subject to the injunction entered against him, in this action, on consent, against future violations of the securities laws.

This Court itself has already found that the criminal penalties are sufficient for purposes of deterrence and punishment under 18 U.S.C. § 3553(a) (requiring courts to "impose a sentence sufficient" to, inter alia, "provide just punishment for the offense" and "afford adequate deterrence").  In imposing Mr. Shkreli's criminal sentence, the Court "consider[ed] the need for the sentence imposed to . . . provide just punishment for the offense [and] to afford adequate deterrence." *See* Sent. Tr. at 109, ECF No. 621, *Shkreli*, No. 15-cr-637 ; *see also id.* at 110–11 ("I have . . . considered the need to make clear, not just to Mr. Shkreli, but also to other participants in our securities markets, that fraud and manipulation are serious offenses that will incur correspondingly serious penalties.").

Additionally, should the Court find civil penalties should be imposed against Mr. Shkreli, it would be appropriate to reduce them to Second Tier penalties.  *See SEC v. Syndicated Food Serv. Intl.*, No. 04-cv-1303, 2014 WL 2884578, at \*20 (E.D.N.Y. Mar. 28, 2014) (reducing Third Tier penalty to Second Tier penalty due to defendant's "willingness to consent to a decree in which he does not dispute the facts for this motion, thus taking responsibility for the consequences of his actions"), *report and recommendation adopted*, 2014 WL 1311442 (E.D.N.Y. Mar. 28, 2014).

### B.    *The Cases Cited by the Commission are Inapposite.*

In support of its argument that civil penalties are appropriate in addition to criminal sanctions in this case because violations of the federal securities laws must be a "money-losing proposition," the Commission relies most heavily on two marquee insider trading cases: *SEC v.*

*Rajaratnam*, 822 F. Supp. 2d 432 (S.D.N.Y. 2011), and *SEC v. Gupta*, No. 11-cv-7566, 2013 WL 3784138 (S.D.N.Y. July 17, 2013).   But the insider trading cases are inapposite to Mr. Shkreli's case.  As the Commission knows, unlike in the case of any other violation of the federal securities laws, Congress has authorized the Commission to seek and courts to impose penalties in an amount up to *three times* the profit gained or loss avoided as a result of insider trading.  *See* 15 U.S.C. § 78u-1(a)(2).  In other words, a different framework applies to insider trading cases, one that triples possible penalties in light of the special nature of insider trading, and this is not an insider trading case.  In any event, it would be an understatement to say that Mr. Shkreli's conduct in this case has already been a money-losing proposition.

Indeed, even though treble civil penalties are authorized by statute for inside trading violations, courts in this Circuit and elsewhere have refused to impose civil penalties on insider traders where significant sanctions have already been imposed in a parallel criminal action.  *See, e.g.*, *Patel*, 1994 WL 364089, at *4 & n.4; *Shah*, 1993 WL 288285, at *6 ("The extensive criminal and regulatory penalties and discipline which Shah has already suffered . . . sufficiently further the goal of deterrence, making imposition of an ITSA [Insider Trading Sanctions Act of 1984] penalty unwarranted here.").[10]

---

[10] *See also SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003) (affirming the denial of civil penalties because, inter alia, the defendant's criminal sentence "temper[ed] the need for an additional monetary penalty"); *SEC v. Chan*, 465 F. Supp. 3d 18, 40 (D. Mass. 2020) (citing the defendant's criminal sentence as a reason for refusing to impose a civil penalty); *SEC v. Kara*, No. 09-cv-1880, 2016 WL 794886, at *7 (N.D. Cal. Mar. 1, 2016) (concluding that the defendant's criminal sentence, among other things, made "the payment of civil penalties excessive and unnecessary").

## CONCLUSION

For all of the foregoing reasons, Mr. Shkreli respectfully requests imposition of a time-limited officer and director bar, and no civil penalty, against him.


Dated: March 19, 2021
      New York, NY

MARTIN SHKRELI

By: _____
    Andrea Zellan, Esq.
    Brafman & Associates, P.C.
    256 5th Avenue, 2nd Floor
    New York, NY 10001
    212-750-7800


By: _____/S/_____
    Philip Moustakis, Esq
    Seward & Kissel LLP
    One Battery Park Plaza
    New York, NY
    (212) 574-1604